In the Matter of ROBERT SULZER, Appellant, v ENVIRONMEN-
TAL CONTROL BOARD OF THE CITY OF NEW YORK et al.,
Respondents.

First Department, February 26, 1991

### APPEARANCES OF COUNSEL

*C. Edwin Baker* of counsel *(Arthur Eisenberg* with him on the brief; *American Civil Liberties Union Foundation* and *New York Civil Liberties Union Foundation,* attorneys), for petitioner.

*Linda H. Young* of counsel *(Ellen B. Fishman* with her on the brief; *Victor A. Kovner, Corporation Counsel,* attorney), for respondents.

### OPINION OF THE COURT

Sullivan, J.

At issue is a challenge to a New York City Environmental

Control Board (ECB) determination that petitioner, Robert Sulzer, violated the city's antiposting law as set forth in Administrative Code of the City of New York § 10-121 (e)[1] in that posters with his name on them were found to have been posted on a "regular and ongoing basis". Although posting handbills is illegal under Administrative Code § 10-119,[2] no evidence was adduced at the hearing that petitioner was either engaged in or was responsible for posting the handbills.

On or about January 14, 1988, petitioner was served with 75 notices of violation charging him with violations of Administrative Code § 10-119, which prohibits posting handbills or advertisements on certain public property without governmental permission. The notices identified petitioner as either "Robert Sulzer—Bob Z Presents" or "Robert Sulzer—Bad Newz Presents". Two handbills were involved in the postings, one advertising a poetry reading (the Brat Poets) and the other a musical event at Lauterbach Bar.

At the ECB hearing, a Department of Sanitation enforcement agent testified that with respect to each of the unlawful postings he observed a sign affixed to a lamppost, traffic signal, fire alarm box, bus shelter or other objects located on public property at a specified location in Brooklyn or Manhattan. In each case, the officer made an initial observation of the posting, took note thereof, and then returned to the location several days later. If the unauthorized sign was still posted, he issued a notice of violation. An investigation revealed that "Bad Newz" and "Bob Z" were petitioner's trade names.

Petitioner testified that he produced the two handbills in question, without charge, to promote the event described

---

1. In pertinent part, section 10-121 (e) provides: "In the event that a violation of section 10-119 * * * continues on a regular and ongoing basis the individual, organization or business whose name appears on the handbill * * * shall be deemed to have knowledge of such activity and shall be liable for a civil penalty * * * for each such violation which may be recovered in a proceeding before the environmental control board. Such proceeding shall be commenced by the service of notice of violation returnable before the board."

2. In pertinent part, section 10-119, entitled "Posting", provides: "It shall be unlawful for any person to * * * post * * * any handbill * * * sign or advertis[e]ment upon any * * * tree, lamppost, awning post, telegraph pole, telephone pole [or] public utility pole * * * in any street; provided, however, that this section shall not apply to any handbill * * * sign or advertisement so posted by or under the direction of the council, or by or under the direction of any other city agency, or with the approval of any person authorized by the board of estimate or bureau of franchises to contract for such handbill * * * sign or advertisement."

therein, printing between 1,000 and 1,500 of each, which he distributed to individuals and various commercial establishments. He did not post any of the handbills on public property nor did he instruct anyone else to do so. Petitioner conceded that he had observed a number of the signs posted on lampposts, streetlights and other public property.

The Administrative Law Judge (ALJ) found petitioner liable for 58 violations of Administrative Code § 10-119 for the unlawful posting of handbills and imposed a civil penalty of $50 for each offense for a total of $2,900. On administrative appeal, the ECB amended the notices of violation and the ALJ's determination to charge and sustain, respectively, violations of Administrative Code § 10-121 (e). As amended, the determination was affirmed, the ECB finding that since the issuing officer had, on two separate occasions, seen the handbills posted at various locations, as had petitioner as well, he could be deemed to have notice of the posting.

Petitioner thereafter commenced this CPLR article 78 proceeding to annul the ECB's order finding him liable for 58 violations of Administrative Code § 10-121 (e) and to declare said provision unconstitutional. In his pleading, petitioner acknowledged that, on a part-time, not-for-profit basis, he arranges band appearances and produces 1,000 to 1,500 handbills advertising such events. He received $35 for out-of-pocket expenses for the Lauterbach flyer and an undisclosed sum for similar expenses for the Brat Poets flyer. He had seen roughly 7 or 8 of the flyers that had been posted but not most of the postings for which he had been charged.

In their answering papers, respondents, the ECB and its Chairman, described the problems attending the posting of signs on public property in the city: the increase in litter, the unsightly appearance and, at times, creation of safety hazards. Recognizing that the act of unlawful posting is virtually undetectable, given the paucity of enforcement agents, Administrative Code § 10-121 (e) was enacted, providing that if a violation "continues on a regular and ongoing basis", the individual whose name appears on the notice or sign "shall be deemed to have knowledge of such activity and shall be liable for civil penalty." A Department of Sanitation command order clarifies the city's policy on "continuous" violations by requiring that a violation be observed and documented on "day one" and that a "second observation * * * be conducted and documented three days after day one." The order also reaffirms a

policy of issuing not more than five notices of violation to first-time offenders.

■ The IAS court found a rational basis for the agency's determination that petitioner violated the posting law, "[g]iven the great number of handbills found posted on public property and the fact that two observations of each violation were made at least one week apart," but held that since, according to the command order, first-time offenders should not be issued more than five notices of violation, the ECB contravened its own policy. Accordingly, the court annulled the determination finding petitioner liable for 58 violations and remanded the matter for a new hearing based solely on a charge of five violations. Although it did not reach petitioner's constitutional claims, the court noted that should petitioner choose to commenced a declaratory judgment action he could expect "little success" because "a state is permitted to regulate the time, place and manner of [commercial] speech to effectuate a significant governmental interest." Petitioner appeals, by leave of this court pursuant to CPLR 5701 (c), to the extent that the IAS court's determination exposes him on remand to a finding of liability with respect to five violations. He notes that a remand would serve little purpose since he has no new evidence to present and would defend solely on the basis of the constitutional arguments presented to the IAS court. We modify to grant the petition, dismiss the five remaining charges of Administrative Code § 10-121 (e) violations and declare said Code provision unconstitutional, as applied.

■ The city's antiposting law is entitled to a strong presumption of validity, which imposes a heavy burden on anyone challenging its constitutionality. *(Nettleton Co. v Diamond,* 27 NY2d 182, 193.) In this regard, NY Constitution, article IX, § 2 (c) and Municipal Home Rule Law § 10 vest the city with broad powers in the regulation of the use of its streets and public areas for the general welfare. *(See, Good Humor Corp. v City of New York,* 290 NY 312, 316-317.) In exercising this power, the city may legitimately place limits on the manner in which public areas are used as a forum for speech and other types of protected expression. *(See, Cornelius v NAACP Legal Defense & Educ. Fund,* 473 US 788, 799-800; *see also, Heffron v International Socy. for Krishna Consciousness,* 452 US 640, 647.) The city's content-neutral antiposting law is, without doubt, an appropriate exercise of its police power to regulate aesthetics and promote safety.

■ To the extent, however, that Administrative Code § 10-

121 (e) is construed as imposing liability on petitioner when the only behavior chargeable to him is having his name on posted handbills, which he produced and distributed to others —an activity fully protected by the First Amendment—without ever instructing them to post the same, it is unconstitutional. To hold petitioner vicariously liable because of someone else's conduct in illegally posting the handbills would, in these circumstances, where petitioner's only act was to engage in constitutionally protected conduct, offend First Amendment principles and violate due process.

*Schneider v State* (308 US 147), which this court finds controlling, involved municipal antilittering ordinances that prohibited, *inter alia,* the passing out of handbills in the street. The court struck down the ordinances, holding that the municipality's objective of preventing littering could not justify infringing on the handbill distributor's First Amendment rights. The court noted that the municipality could properly pursue its goal by punishing "those who actually throw papers on the streets." *(Supra,* at 162.) Similarly, here, assuming the city may properly prohibit the posting of handbills, an issue not before us, it can pursue its goal by punishing those who actually post the handbills, not the person who only engaged in the protected activity of distributing them. Absent proof of some nexus to the posting activity, such as, for instance, directions to or the hiring of others to do so, it seems to us that the city can no more impose liability for handing out handbills that are later posted than could the municipality in *Schneider* for handing out leaflets that are later dropped on the ground. And, it should be noted, although Administrative Code § 10-121 (e) does not require such proof, the mere observation by the distributor of the handbills posted at various location at some later date, as has been shown here, does not, without more, logically suggest that the distributor took part in the illegal posting.

To obviate the difficulties in detecting the wrongdoer and placing responsibility where it rightfully belongs, the ordinances both here and in *Schneider* seek instead to impose liability on the distributor, who was engaged in a constitutionally protected activity. While enforcement mechanisms aimed at the former may be less effective in promoting the municipality's aesthetic interests than those aimed at the latter, "[a]ny burden imposed upon the city authorities in cleaning and caring for the streets as an indirect consequence of such distribution [of leaflets] results from the constitutional protec-

tion of the freedom of speech and press" *(supra,* 308 US, at 162).

Respondents attempt to distinguish the city's antiposting law at issue from the ordinances invalidated in *Schneider* by arguing that the Administrative Code "does not prohibit an individual from handing out leaflets or handbills on the same street and sidewalks where posting is prohibited." The same argument, however, would apply to at least one of the invalidated *Schneider* ordinances, which had been interpreted to apply only if the leafletting resulted in litter. The invalidated ordinance made a distributor liable if someone else dropped the leaflet on the street. Here, the Code provision makes the distributor liable if someone else posts the leaflet on a street pole (if the leaflet contains the distributor's name and the leaflet remains posted on a continuing basis). Thus, in essence, the proscribed conduct is the same.

Similarly unavailing is respondents' reliance on *City Council v Taxpayers for Vincent* (466 US 789), which upheld a municipal ordinance prohibiting the posting of signs on public property and imposing liability on the person "responsible for any such illegal posting" *(supra,* at 792, n 1). While Administrative Code § 10-119 may be similar to the ordinance in *Vincent,* section 10-121 (e) goes much further. Rather than impose liability on the one responsible for the posting, it holds the person named on the poster liable, irrespective of responsibility, as long as the violation continues on a "regular and ongoing" basis.

■ Moreover, we are of the view that Administrative Code § 10-121 (e) is unconstitutionally vague. The Fifth and Fourteenth Amendments' Due Process Clauses proscribe the imposition of penal sanctions against conduct that is defined in language so vague that "men of common intelligence must necessarily guess at its meaning". *(Connally v General Constr. Co.,* 269 US 385, 391.) It has been noted that "perhaps the most important factor affecting the clarity that the Constitution demands of a law is whether it threatens to inhibit the exercise of constitutionally protected rights. If, for example, the law interferes with the right of free speech or of association, a more stringent vagueness test should apply." *(Hoffman Estates v Flipside, Hoffman Estates,* 455 US 489, 499; see, *People v Illardo,* 48 NY2d 408, 414.) "The general test of vagueness applies with particular force in review of laws dealing with speech." *(Hynes v Mayor of Oradell,* 425 US 610, 620.) It should be noted, however, that a "greater tolerance" is

allowed where civil rather than criminal penalties attach, as is the case here, "because the consequences of imprecision are qualitatively less severe." *(Hoffman Estates v Flipside, Hoffman Estates, supra,* at 498, 499.)

In this regard, the phrase "a violation * * * [that] continues on a regular and ongoing basis" is completely undefined. Section 10-121 (e) contains no hint as to how much time must pass or what events, if any, must occur before a section 10-119 violation becomes "continuing". Is it "continuing", as respondents construe section 10-121 (e), after a second observation three days after the first? Or does a violation "continue * * * on a regular and ongoing basis" only after notification by the city to the person named in the handbill? Furthermore, what does "regular" add to continuing basis? Does it mean that the offense requires additional postings after the original posting or after notification to the person named in the handbill? Notwithstanding that such an interpretation renders meaningless the term "regular", the ECB concludes that a single posting in violation of section 10-119 may be "regular and ongoing".

Of course, if the phrase "continues on a regular and ongoing basis" is construed as referring to a time after the city has given the person named on the posted handbill actual notice of the violation of section 10-119 and the opportunity to remove the poster, the constitutional concerns involved herein are, for the most part, avoided. Wherever possible, statutory or administrative provisions should be construed to avoid constitutional problems. *(DeBartolo Corp. v Florida Gulf Coast Trades Council,* 485 US 568, 575.)

As now interpreted by the city, the Code provision "continuing basis" requires it to wait for the enforcement officer's second observation. Presumably, the delay is intended to allow the person named in the handbill to remove it and thus prevent the violation from "continuing". The wait, however, serves no purpose; it has no bearing on whether the person has knowledge that the posting has occurred. The delay makes sense—in terms of removing the offending posting—if the person named is given notice during this waiting period. In fact, as this record discloses, that was the city's policy until December 1986 when the then existing operations order was rescinded and the city began to issue notices of violation without any prior warning. In any event, however, even under that interpretation, petitioner could not be found to have violated section 10-121 (e) since the city did not notify him of

the illegal posting until after he was served with notices of violation.

Moreover, section 10-121 (e) imposes liability on "the individual, organization or business whose name appears on the handbill". Taken literally, this provision seems to make any person whose name appears on the handbill liable, even though that person neither produced, distributed nor knew about the handbill. Nor is it clear who is liable if several names are listed. While it can be assumed that the city could not interpret section 10-121 (e) to apply to every situation literally falling within its provisions, given the impossibility of a literal interpretation, a person of "common intelligence" cannot know which nonliteral interpretation to follow. The scope of this Code provision and the discretion it gives to enforcement agents is completely open-ended.

Since persons of common intelligence cannot determine the circumstances in which they will incur liability under section 10-121 (e) and since the production and distribution of handbills is the only type of activity under the control of a potential violator that could result in liability, this Administrative Code provision has the potential for chilling the freedom of expression that the First Amendment was intended to protect. This danger has led the courts to be vigorous in their application of the vagueness doctrine in matters affected by First Amendment considerations. *(See, e.g., Smith v Goguen,* 415 US 566; *People v Dietze,* 75 NY2d 47, 53.)

Administrative Code § 10-121 (e) may not be saved, as suggested by the IAS court, as a reasonable regulation of the time, place or manner in which one may engage in protected forms of expression or as a constitutional regulation of commercial speech. Section 10-121 (e) is an entirely different sort of regulation from a time, place or manner restraint. It imposes vicarious liability on a person on the basis of someone else's unprotected conduct, not because of the time, place or manner of the liable person's conduct. It does not matter when, where or how the person named in the posted handbill printed or distributed it.

Nor is section 10-121 (e) a regulation directed at commercial speech since it applies to anyone whose name appears on a posting, commercial or otherwise. Nothing in section 10-121 (e) or 10-119 nor any interpretation by the city indicates that those Code provisions are limited to commercial speech. Thus, assuming a regulation such as section 10-121 (e) is proper in

the area of commercial speech *(see, Hoffman Estates v Flipside, Hoffman Estates, supra,* 455 US, at 496-497; *Ohralik v Ohio State Bar Assn.,* 436 US 447, 462, n 20; *but cf., People v Remeny,* 40 NY2d 527), the provision is constitutionally overbroad since it applies to all political, social, cultural or other protected expression found posted in the proscribed areas. Moreover, the overbreadth is substantial. *(Broadrick v Oklahoma,* 413 US 601.)

■ Were we not annulling the determination for the reasons already stated, we would, in any event, vacate it since the ECB violated a fundamental principle of due process by failing to charge petitioner with the offense for which he was ultimately found liable. After being found guilty of section 10-119 violations, petitioner appealed on the ground that the city had failed to allege, much less offer any evidence, that he had posted any of the offending handbills. Nor did the ALJ make any finding that petitioner had posted handbills. Recognizing the merit of petitioner's claim, the ECB amended the charge "to conform to the evidence adduced at the hearing", evidence which it concluded constituted a section 10-121 (e) violation.

Administrative Code § 10-121 (e) creates an offense different from that defined in section 10-119. The former requires a violation of section 10-119 but, unlike the latter, does not require the party liable to have been the person who did the posting. In so providing, section 10-121 (e) eliminates a crucial element of the offense defined in section 10-119. In addition, section 10-121 (e) requires proof of two elements beyond that which is required by section 10-119, i.e., that the violation "continues on a regular and ongoing basis" and that there be an "individual, organization or business whose name appears on the handbill". Thus, the two sections define separate and disparate offenses, each containing elements not present in the other. Moreover, in some respects the penalties—which are separately provided for by the Administrative Code—differ. Nor is there any reason to believe that the fact that the poster continues to be posted, the most crucial additional element of section 10-121 (e), gives rise to any presumption that the "individual, organization or business" identified with the poster is the "person" who posted it.

The ECB's amendment of the charge on administrative appeal in order to conform to the proof violated petitioner's due process rights. "The first fundamental of due process is notice of the charges made. This principle equally applies to an administrative proceeding for even in that forum no person

may lose substantial rights because of wrongdoing shown by the evidence, but not charged." *(Matter of Murray v Murphy,* 24 NY2d 150, 157.) Even amendment at the time of the administrative hearing violates constitutionally required due process. *(See, e.g., Cruz v Lavine,* 45 AD2d 720.) Moreover, where there is a denial of "such a fundamental constitutional right as the right to be put on notice of the charges made, prejudice will be presumed". *(Matter of Murray v Murphy, supra,* at 157.)

Accordingly, the order and judgment (one paper) of the Supreme Court, New York County (Edith Miller, J.), entered December 22, 1989, which granted the petition to the extent of annulling the challenged determinations and remanding the matter for a new hearing as to five alleged violations, should be modified, on the law, to grant the petition, dismiss the five remaining charges, declare Administrative Code § 10-121 (e) unconstitutional, as applied, and, except as thus modified, affirmed, without costs or disbursements.

MURPHY, P. J., KUPFERMAN, WALLACH and RUBIN, JJ., concur.

Order and judgment (one paper), Supreme Court, New York County, entered on December 22, 1989, unanimously modified, on the law, to grant the petition, dismiss the five remaining charges, declare Administrative Code § 10-121 (e) unconstitutional, as applied, and, except as thus modified, affirmed, without costs or disbursements.