OPINION OF THE COURT
Memorandum.
Ordered that the judgments of conviction are reversed, on the law, the accusatory instruments are dismissed, and the fines, if paid, are remitted.
Defendant was charged, in each of five separate informations, respectively, with placing a sign advertising its opticians’ business on public property at five locations in the Town of Brook-haven in violation of Town of Brookhaven Code § 57A-11 (B), which prohibits commercial advertising on public property and roads. Defendant’s counsel entered not guilty pleas on defendant’s behalf and moved to dismiss the informations. Counsel argued, in the District Court as he does on appeal, that the provision under which defendant was charged did not further the Town’s stated purposes in enacting chapter 57A of the Code; that certain of the regulation’s terms and expressions are unconstitutionally vague; and that the entirety of chapter 57A, which contains the provisions regulating the location and configuration of commercial and noncommercial signs, is unconstitutional because chapter 57A impermissibly favors commercial speech over noncommercial speech. Defendant’s counsel urges that, in the absence of a severability clause (which the Town has since enacted), chapter 57A, in its entirety, must be invalidated. The District Court denied the motion and, on February 9, 2012, defendant’s counsel entered guilty pleas to the five informations on defendant’s behalf. For the reasons that follow, we find chapter 57A to be unconstitutional.
In furtherance of chapter 57A’s stated purposes of “[a]voiding an unsightly proliferation of unnecessary signs,” of “ [protecting the public from improperly located or distracting *97 signs which create a hazard to said public by virtue of their construction, location and/or illumination” (Code § 57A-1 [A], [C]), of providing “adequate signs for the business community to communicate its availability to the public” (Code § 57A-1 [B]), and of allowing “effective means[ ] for political expression” (Code § 57A-10 [A]), the Code bars all commercial advertising on public roads and property (Code § 57A-11), bars virtually all commercial advertising aside from the premises on which the goods or services are provided (i.e., permitting “on-site” and barring “offsite” advertising) (e.g. Code § 57A-4 [A]), limits the size and configuration of all signs (e.g. Code § 57A-4 [A] [2]), and permits limited forms of noncommercial signage in most areas of the Town, albeit, with respect to political advertising, for only 30 days in relation to a particular campaign (Code §§ 57A-3; 57A-10 [B], [C]). The Code also exempts from regulation several categories of signs, including utility signs, signs associated with government interests and traffic control, and other signs required by law (Code § 57A-3). Code violations are punishable by fines and up to 15 days’ incarceration (Code § 57A-24 [A]). Local governments retain “broad powers” to regulate the use of public areas (Matter of Sulzer v Environmental Control Bd. of City of N.Y., 165 AD2d 270, 275 [1991]; see also Municipal Home Rule Law §§ 2 [8]; 10), and “[b]ecause zoning ordinances are legislative acts they enjoy a strong presumption of constitutionality[.] . . . [Therefore,] if there is a reasonable relation between the end sought to be achieved and the means adopted to achieve it[,] the regulation will be upheld” (Matter of Town of Islip v Caviglia, 73 NY2d 544, 550-551 [1989]; see also String-fellow’s of N.Y. v City of New York, 91 NY2d 382, 395-396 [1998]). “Questions as to wisdom, need or appropriateness are for the [legislative body] . . . [and courts will] strike down statutes only as a last resort. . . and only when unconstitutionality is shown beyond a reasonable doubt” (Paterson v University of State of N.Y., 14 NY2d 432, 438 [1964] [citations omitted]; see McMinn v Town of Oyster Bay, 66 NY2d 544, 548 [1985]). Accordingly, a challenger bears a “heavy burden” to overcome the presumption of constitutionality (Matter of Sulzer, 165 AD2d at 275).
As a general rule, “time, place, and manner restrictions are permissible if ‘they are justified without reference to the content of the regulated speech, . . . serve a significant governmental interest, and . . . leave open ample alternative channels for communication of the information’ ” (Metromedia, Inc. v San *98 Diego, 453 US 490, 516 [1981], quoting Virginia Bd. of Pharmacy v Virginia Citizens Consumer Council, Inc., 425 US 748, 771 [1976]). “[T]he New York State Constitution does not afford heightened free speech protections to commercial speech” (OTR Media Group, Inc. v City of New York, 83 AD3d 451, 452 [2011]). Where, as here, the restrictions are based on “the type of entity that violates the regulations” as opposed to “the content of the advertisements,” and because defendant’s signs were not inherently misleading or related to unlawful activity, a “rational basis” standard of review is applicable (id. at 453; see e.g. Willow Media, LLC v City of New York, 78 AD3d 596 [2010]).
With respect to commercial speech, the Court of Appeals has adopted the four-part test employed in Central Hudson Gas & Elec. Corp. v Public Serv. Commn. of N. Y. (447 US 557 [1980]) to determine whether restrictions are constitutional: “(1) whether the communication is outside the scope of constitutional protection — i.e., is it misleading or related to unlawful activity? (2) whether the government interests sought to be protected are substantial? (3) how directly the regulation advances those interests? and (4) whether there is a less restrictive alternative?” (Matter of von Wiegen, 63 NY2d 163, 173 [1984]). Elaborating on this test, in Florida Bar v Went For It, Inc. (515 US 618, 623-624 [1995] [internal quotation marks and citation omitted]), the Supreme Court stated:
“[Commercial speech [enjoys] a limited measure of protection, commensurate with its subordinate position in the scale of First Amendment values, and is subject to modes of regulation that might be impermissible in the realm of noncommercial expression
“[Accordingly], we engage in intermediate scrutiny of restrictions on commercial speech, analyzing them under the framework set forth in Central Hudson . . . [whereby] the government may freely regulate commercial speech that concerns unlawful activity or is misleading . . . [Where the c]ommercial speech . . . falls into neither of those categories . . . the advertising . . . may be regulated if the government satisfies a test consisting of three related prongs: First, the government must assert a substantial interest in support of its regulation; second, the government must demonstrate that the restriction on commercial speech directly and materially advances that interest; and third, the *99 regulations must be narrowly drawn” (see also Matter of Lucas v Scully, 71 NY2d 399, 404 [1988] [“commercial speech — although not vested with full First Amendment stature — is entitled to a certain degree of protection”]).
Nevertheless, “[i]t is common ground that governments may regulate the physical characteristics of signs” in addition to their location and content (City of Ladue v Gilleo, 512 US 43, 48 [1994]). The stated purpose of the Code, essentially to avoid “an unsightly proliferation of unnecessary signs” (Code § 57A-1 [A]) in the interests of traffic safety and esthetics, represents a “substantial” governmental interest which is constitutionally furthered by the regulation under which defendant was charged (see Members of City Council of Los Angeles v Taxpayers for Vincent, 466 US 789, 805, 807 [1984] [“It is well settled that the state may legitimately exercise its police powers to advance esthetic values . . . (Thus, t)he problem addressed by (an ordinance which banned political advertising in public places)— the visual assault . . . presented by an accumulation of signs posted on public property — constitutes a significant substantive evil within ... (a local government’s) power to prohibit”]; see also Metromedia, Inc., 453 US at 507-508; OTR Media Group, Inc., 83 AD3d at 453; People v Weinkselbaum, 194 Misc 2d 19, 22 [App Term, 2d Dept, 9th & 10th Jud Dists 2002]; 2 Rathkopf, Zoning and Planning § 17:5).
In Florida Bar, the Supreme Court stated:
“[T]he differences between commercial speech and noncommercial speech are manifest. . . [T]he ‘least restrictive means’ test has no role in the commercial speech context . . . ‘What our decisions require,’ instead, ‘is a “fit” between the legislature’s ends and the means chosen to accomplish those ends,[ ] a fit that is not necessarily perfect, but reasonable; that represents not necessarily the single best disposition but one whose scope is “in proportion to the interest served” . . . [and which is] narrowly tailored to achieve the desired objective’ ” (515 US at 632 [citation omitted]).
“[A] governmental body seeking to sustain a restriction on commercial speech must demonstrate that the harms it recites are real and that its restriction will in fact alleviate them to a material degree” (Edenfield v Fane, 507 US 761, 770-771 [1993]; see also Rubin v Coors Brewing Co., 514 US 476, 486-487 [1995]). However, it is irrelevant that barring defendant’s sev *100 eral small and scattered signs would not materially advance the interests stated, because a statute’s constitutional validity is judged by “the relation it bears to the overall problem the government seeks to correct . . . not on the extent to which it furthers the government’s interest in an individual case” (United States v Edge Broadcasting Co., 509 US 418, 430 [1993] [citation omitted]).
Nevertheless, in this context, a statute must be “narrowly tailored to achieve the desired objective” (Lorillard Tobacco Co. v Reilly, 533 US 525, 556 [2001]). “A statute is narrowly tailored if it targets and eliminates no more than the exact source of the ‘evil’ it seeks to remedy ... A complete ban can be narrowly tailored, but only if each activity within the proscription’s scope is an appropriately targeted evil” (Frisby v Schultz, 487 US 474, 485 [1988]). Although chapter 57A bars commercial advertising on public lands and roads, read as a whole, chapter 57A provides ample opportunity to advertise commercial activities on privately owned land and businesses (see Metromedia, Inc., 453 US at 508 [upholding so much of a municipality’s regulations as imposed a general ban on offsite commercial billboards, in part, because the municipality had “stopped short of fully accomplishing its ends: It has not prohibited all billboards, but allows on-site advertising and some other specifically exempted signs”]). Here, because the regulations are content neutral and permit a substantial scope for commercial expression, the tailoring requirement is satisfied “even though it is not the least restrictive or least intrusive means of serving the statutory goal” (Hill v Colorado, 530 US 703, 726 [2000]).
Further, chapter 57A’s limitations on offsite commercial signs and billboards are not impermissibly underinclusive, a principle based on the recognition that “an exemption from an otherwise permissible regulation of speech may represent a governmental attempt to give one side of a debatable public question an advantage in expressing its views to the people” (City of Ladue, 512 US at 51 [internal quotation marks and citation omitted]). However, a governmental body may “reasonably conclude” that its interest in regulating offsite advertising is “stronger” with respect to traffic safety and aesthetics than for onsite advertising without being constitutionally underinclusive (Metromedia, Inc., 453 US at 511-512).
Notwithstanding that “esthetic judgments are necessarily subjective, defying objective evaluation” (Metromedia, Inc., 453 US at 510), Code § 57A-11 is not vague. The vagueness doc *101 trine, which is essentially a dimension of due process, “ ‘requires only a reasonable degree of certainty so that individuals of ordinary intelligence are not forced to guess at the meaning of [the enactment’s] terms’ ” (Dua v New York City Dept. of Parks & Recreation, 84 AD3d 596, 598 [2011], quoting Foss v City of Rochester, 65 NY2d 247, 253 [1985]). In Hill v Colorado, the Supreme Court stated:
“A statute can be impermissibly vague for either of two independent reasons. First, if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits. Second, if it authorizes or even encourages arbitrary and discriminatory enforcement . . .
“[However] we can never expect mathematical certainty from our language . . . [and where] it is clear what the ordinance as a whole prohibits . . . speculation about possible vagueness in hypothetical situations . . . will not support a facial attack on a statute when it is surely valid in the vast majority of its intended applications” (530 US at 732-733 [internal quotation marks and citations omitted]).
The meaning of the terms employed in Code § 57A-11, for example “signs,” “advertising devices,” and “aesthetic character,” as well as terms or expressions found elsewhere in chapter 57A to which defendant objects as impermissibly vague, such as “public roadways,” “public property,” “onsite businesses,” “commercial premises,” and “political signs,” are either specifically defined in the chapter or are amenable to commonsense understanding (see McKinney’s Cons Laws of NY, Book 1, Statutes § 94 [“statutory language is generally construed according to its natural and most obvious sense”]; Edge Broadcasting Co., 509 US at 426 [recognizing a “commonsense distinction between speech proposing a commercial transaction, which occurs in an area traditionally subject to governmental regulation, and other varieties of speech”] [internal quotation marks and citation omitted]).
While the section of chapter 57A defendant violated, considered in isolation, represents a constitutional exercise of the Town’s zoning authority, considered as a whole, chapter 57A unconstitutionally favors commercial speech over noncommercial speech. Noncommercial speech is to be afforded “a greater degree of protection” than commercial speech (Metromedia, Inc., 453 US at 513). A governmental body favors commercial speech over noncommercial speech, for example, by al *102 lowing greater scope to onsite commercial speech than to onsite noncommercial speech (id.). While there are few explicit limitations on noncommercial advertising, aside from public lands and roads, and on “political” advertising, chapter 57A’s language of limitation (“only the following signs” are “permitted” or “allowed”) can only be construed as imposing broad restrictions on noncommercial speech that is not “political.” Chapter 57A permits commercial advertising in every zoning district aside from public lands and roads, and bars noncommercial speech in most contexts in which commercial speech is allowed.
The question then is whether the unconstitutional portions may be severed from the constitutional portions. Absent a severability clause, “the burden is on the [legislative body] to show that the unconstitutional provisions are severable . . . [t]he critical issue [being] whether the legislation would have been enacted if it had not included the unconstitutional provisions” (National Adv. Co. v Town of Babylon, 900 F2d 551, 557 [2d Cir 1990]). Where “the constitutional and unconstitutional provisions [are] inextricably interwoven” an inference may be drawn that they are nonseverable (id.; see McKinney’s Cons Laws of NY, Book 1, Statutes § 150 [d]). Although the severability clause did not exist at the time of the instant offenses, we may nevertheless consider whether the unconstitutional portions may be severed from the constitutional parts (e.g. Lamar Adv. of Penn, LLC v Town of Orchard Park, N.Y., 356 F3d 365, 375 [2d Cir 2004]), and we conclude that they cannot be severed. In light of the ubiquitous use of the language of limitation quoted above and the relative absence of media of expression for noncommercial speech, it is impossible to sever so much of chapter 57A as permits “commercial favoritism” while retaining the remainder. The chapter’s provisions are so closely interwoven that removing them wholesale would render the regulatory scheme incoherent and would amount to a judicial rewriting of a legislative scheme, which the courts do not favor (National Adv. Co., 900 F2d at 557).
Accordingly, because we find chapter 57A to be unconstitutional, the judgments convicting defendant of violating section 57A-11 (B) of the Code are reversed, the accusatory instruments are dismissed, and the fines, if paid, are remitted.
LaSalle, J.P., Nicolai and Iannacci, JJ., concur.