Keating, J.
Petitioners, Murray and Mullaney, were two detectives who were brought up on disciplinary charges by the Police Commissioner of the City of New York which ultimately resulted in a determination dismissing them from the department. The charges stemmed from their assignment to investigate a complaint filed by Seymour Tauss that certain merchandise and equipment had been feloniously taken by his two 1 ‘ partners ’ ’, Forti and Lazarski, from their place of business. The detectives contacted the two partners—actually they were equal shareholders of a corporation— and told them to come down to the police station for a meeting.
When they arrived at the station house, Forti and Lazarski spoke with the two detectives and readily admitted taking the merchandise, but claimed they had done so because Tauss had threatened to seize and sell any disposable property in order to recoup his investment in the unsuccessful enterprise. The other two men had thereupon removed the property for safe *153 keeping. Shortly after this discussion, Tauss appeared, accompanied by Alvin Rosen, whom Tauss introduced as a friend.
It is the events which then purportedly occurred which form the basis of the charges against petitioners. On the most important points, what transpired is disputed.
According to Forti, Rosen adamantly maintained that the partners had committed a crime and would be imprisoned unless they made good to Tauss and he suggested that they sell their interest in the company to Tauss at a price which was less than one third of the value of the merchandise removed. Petitioners were present throughout this meeting, did nothing to stop Rosen’s assertions concerning the alleged crime which the two partners had committed, but on the contrary repeatedly suggested that the other two arrive at a settlement with Tauss. Am agreement which Rosen had drawn up was signed. This, too, was in the officers’ presence. The two partners claimed to have signed the agreement in order to avoid prosecution and in order to be permitted to leave the station. Also, Tauss and Rosen testified that later there were meetings between them and petitioners, at which money was paid to petitioners for their assistance in arranging the so-called settlement.
Petitioners claimed that they had informed the parties concerned that the complaint was unfounded but they permitted them to occupy .the squad commander’s office for a period of an hour, in order that the parties could settle their differences without a fight, which they had been warned would occur if the parties left the station house. They also denied all knowledge of what took place in the office during the period, and, although they admitted that- the written agreement testified to by Forti could have been drawn up in their absence, they denied all knowledge of the agreement.
Three charges were brought against both petitioners. The first specification changed appellants with knowingly associating with one Alvin Rosen, a criminal; the second—that they knowingly had ‘ ‘ dealings with the said Alvin Rosen mentioned in Specification # 1”, and the third-—-that they had negligently conducted the investigation of the alleged crime.
The trial commissioner acquitted the petitioners of the first specification because there was no evidence that petitioners *154 knew Rosen was a criminal. With respect to the second specification, he found that the petitioners did no.t “ knowingly have dealings ” with Rosen in several places in the Borough of Brooklyn between January 4, 1960 and January 11,1960, alleged in specification No. 2, except for the meeting in the police precinct house on January 5. The trial commissioner specifically rejected any claim that there was any corruption or ulterior motive in the dealings which the petitioners had with Rosen at the station house, but found that the petitioners, by encouraging the parties to settle their dispute and in failing to prevent the coercive tactics of Rosen, which occurred in their presence, had tacitly permitted him to violate the law. The trial commissioner also recommended that petitioners be found to have violated the third specification in three minor respects. Because of their excellent records, a fine of 15 days’ pay and probation for a year was recommended.
In making his findings, the trial commissioner rejected the testimony of Tauss and Rosen who were convicted criminals and who had an interest in bearing witness against the petitioners in order to receive consideration in pending cases against them. Their testimony, he found, was completely unreliable, contradictory, and inherently incredible. The fact that petitioners had been found not guilty (in a nonjury trial) of criminal charges growing out of the same transactions was also significant. While the trial commissioner recognized that the burden of proof in a criminal case is higher than in a disciplinary hearing, he also noted that the department had not brought charges of corruption against the petitioners.
The Police Commissioner disagreed with the conclusion of the trial commissioner that petitioners had no ulterior motive other than to quickly dispose of a bothersome complaint and to close out the case without fear of subsequent repercussions. He could not accept the conclusion that they were the mere instruments of a coercive technique of this nature. He stated that he came to the conclusion “ without hesitation or reservation ” that petitioners engaged in these dealings with a corrupt motive. He also found that they received sums of money in partial payment of the $2,000 agreed upon for their participation. It is clear that the action by the Commissioner in dismissing petitioner did not rest upon the conclusion that the *155 trial commissioner’s findings warranted the punishment of dismissal.
Petitioners then went to court seeking to overturn the Police Commissioner’s determination. They contended that the Commissioner’s finding of corruption was not supported by substantial evidence and, secondly, that the determination would have to be annulled because it was based on a specification not charged and, therefore, petitioners were deprived of a fair hearing since they had been led to believe that there was no charge of corruption pending in this proceeding. In the Appellate Division, by a closely divided (court, .the determination of the Police 'Commissioner was sustained (25 A D 2d 409).
The first question is whether there is substantial evidence to support a finding of corruption. Conceding that the final determination is to be made by the Police Commissioner, 'appellants contend that, in the face of the trial commissioner’s clear finding of no corruption, the Police Commissioner was bound to give heavier weight to the trial commissioner’s findings than he did since the entire case depended on questions of credibility of witnesses. Reliance is placed upon our decision in Matter of Kelly v. Murphy (20 N Y 2d 205, 209) where the trial commissioner had exonerated the petitioner, but was reversed by the Police Commissioner. In annulling that determination we relied heavily upon Justice Frankfurter.’s discussion of the substantial evidence rule in Universal Camera Corp. v. Labor Bd. (340 U. S. 474), and especially upon the statement that “ surely an examiner’s report is as much a part of the record as the complaint or the testimony ” (p. 493).
Furthermore, argue the petitioners, where the witnesses against the police officers are disreputable, greater credence must be given to the police officers, especially where, as here, their records are exemplary (Matter of La Forge v. Kennedy, 7N Y 2d 973).
Despite the strong argument of petitioners, we cannot conclude that, as a matter of law, the finding of corruption must be overturned. Disregarding the testimony of Tauss and Rosen, Forti’s testimony, which was fully credited by the trial commissioner, would justify a finding that petitioners had acted with a corrupt motive. The question remains, however, whether the petitioners received a fair hearing. It is the city’s conten *156 tion that such specification was not required and that the evidence of the corruption went solely to the motive with which the petitioners committed the violations alleged in the specifications, and such evidence was, therefore, relevant on the question of punishment.
A fair statement of the situation is this. The first charge — of which the petitioners were found not guilty—was that they associated with Alvin Rosen knowing that he was a criminal, and the second charge was to the effect that they had dealings with Alvin Rosen although they knew he was a criminal.
An attorney or any person reading the first two specifications would conclude that the second charge was the more serious one, and that, while the detective might be found guilty of knowingly associating with a criminal but not guilty of having dealings with him, the converse was impossible.
This was the assumption upon which petitioners’ counsel tried the case and there is no reason to say that the belief was unreasonable or unwarranted. Corruption had not been charged although that easily could have been done. The third charge of failing and neglecting to conduct a proper investigation tended to reinforce the attorney’s conclusion that corruption was not in the case. It was pointless to bring a charge of neglect of duty and omit a charge of corrupt dealings if corruption were the heart of the case. Other circumstances indicate the reasonableness of the attorney’s assumption that corruption was not the gravamen of the charge. At the hearing counsel made clear his view that corruption was not being charged and neither the trial commissioner nor the department’s counsel contradicted him. In fact, in his report, the trial commissioner made it clear that he too was operating on that assumption and did not believe corruption was an issue at the hearing.
Nevertheless, he found the petitioners guilty on specification No. 2 because he considered their conduct in permitting Rosen to coerce Forti in their presence as having had “dealings” with Alvin Rosen. Unless the meaning of words is to be distorted beyond recognition, dealings could not conceivably cover the conduct which the trial commissioner found occurred here. The phrase ‘ ‘ the said Alvin Rosen ’ ’ mentioned in specification No. 2 must refer to Alvin Rosen the criminal, as charged in *157 specification No. 1. Otherwise, as the case was tried, the charge was meaningless. Therefore, unless the burden is upon the petitioners in this proceeding to prove themselves innocent of all possible charges, their dismissal must be reversed and a new hearing held.
The first fundamental of due process is notice of the charges made. This principle equally applies to an administrative proceeding for even in that forum no person may lose substantial rights because of wrongdoing shown by the evidence, but not Charged. (Matter of Ruffalo, 390 U. S. 544; Matter of Shapiro v. Board of Regents, 16 N Y 2d 783; Matter of Hecht v. Monaghan, 307 N. Y. 461, 473-474; Cole v. Arkansas, 333 U. S. 196; Lloyd Sabaudo Societa v. Elting, 287 U. S. 329, 339-340.)
Here, not only was the charge of corruption not made but was, as far as the issue was discussed, rejected. A public employee has a claim to due process and he may assume that the hearing will be limited to the charges as made. His lawyer is likewise entitled to prepare for the hearing in reliance that, after the hearing is concluded, the charges will not be switched. Any other course is a violation of the employee’s right to be treated with elemental fairness.
The majority in the Appellate Division, however, stated that appellants knew corruption was at issue and that they had prepared for it and that it had been fully litigated and that the defendants were not prejudiced. This argument is erroneous both on principle and in fact. Where we are involved with such a fundamental constitutional right as the right to be put on notice of the 'charges made, prejudice will be presumed (Matter of Shapiro v. Board of Regents, supra-, Matter of Hecht v. Monaghan, supra).
Furthermore, in fact, there was prejudice as is apparent from the entire situation.. Counsel could fairly rely on the view that this hearing was to determine whether the petitioners, while not guilty of corrupt dealings, had still deviated from the standards of proper police conduct. Counsel could rightly have expected that the testimony as to corruption would be disregarded. Rosen’s and Tauss’ testimony might, however, indicate in some credible respect that the petitioners were *158 aware of Rosen’s criminal background (specifications Nos. 1 and 2). Additionally, the testimony of Forti might support a lack of diligence charge (specification No. 3).
'Since, as far as it appeared, the (hearing was not concerned with corruption, counsel no doubt followed an entirely different approach to the defense of the case than he would have had he been aware that corruption was still part of the case. The most obvious change would have been a more aggressive attack on Forti and especially Forti’s recollection. In any case, where the issue of guilt is close, we can feel no certainty that the petitioners’ defense against the charges was not prejudiced. Having been denied due process, they are entitled to a new hearing.
As for specification No. 3, there is sufficient evidence to support a charge of lack of diligence, but it would then be a technical violation and would surely not merit the punishment imposed.
Accordingly, the determination of the Police 'Commissioner should be annulled and the matter remitted to him for further proceedings in accordance with the views expressed herein.
Chief Judge Fuld and Judges Burke, Scileppi, Bergan and Breitel, concur with Judge Keating ; Judge Jasen dissents and votes to affirm on the opinion at the Appellate Division.
Order reversed, without costs, and the matter remitted to Special Term for further proceedings in accordance with the opinion herein.