■ In the Matter of JOSEPH HYNES, Petitioner, v DAVID AXELROD, as Commissioner of State of New York Department of Health, et al., Respondents.—Yesawich, Jr., J. Proceeding pursuant to CPLR article 78 (transferred to this court by order of the Supreme Court at Special Term, entered in Albany County) to review a determination of respondent Commissioner of Health which found that petitioner had violated certain provisions of the Public Health Law.

On November 10, 1982, a Department of Health investigation of petitioner, who was suspected of illegally prescribing and dispensing controlled substances, culminated in respondent Commissioner of Health charging petitioner with numerous violations of Public Health Law article 33 and 10 NYCRR part 80.

At the hearings had on these charges, two of the Department's undercover investigators, Richard Young and Sandra Schoonmaker, provided key testimony. Young testified that he posed as a patient who desired drugs because they gave him more energy and a "nice high". Seven times petitioner prescribed controlled substances which are commonly used for obesity, hypertension and pain; according to Young, he never suggested to petitioner that he suffered from any of those afflictions. Schoonmaker recounted that petitioner twice prescribed and dispensed controlled substances to her. She told him she wanted Valium because she liked it and was taking two diet pills daily because she enjoyed the "up-feeling" they gave her. It was her testimony that she specifically told petitioner that weight loss was not her reason for wanting the drugs. On several occasions, the two investigators wore concealed microphones, enabling their conversations with petitioner to be tape recorded. The tapes, which were admitted into evidence at the hearing, corroborated their stories.

Petitioner, testifying in his own behalf, stated that the drugs were prescribed to treat weight loss, nerves, pain and hypertension, and explained further that an 85% hearing loss in his left ear prevented him from hearing many of the reasons Young and Schoonmaker advanced for craving the controlled drugs. The Administrative Law Judge found petitioner guilty of 22 violations. A total fine of $22,000, $1,000 for each violation, was recommended. The Commissioner adopted the hearing officer's report and recommendation in toto, after which petitioner commenced this CPLR article 78 proceeding.

There is merit in the contention that it was improper for the Commissioner to find petitioner guilty of a violation for which he had not been charged. During the hearing, petitioner admitted disposing of unwanted Schedule II drugs by flushing them down the toilet, a violation of 10 NYCRR 80.51. While that regulation directs that undesired controlled substances are to be surrendered to the Bureau of Narcotic Control, petitioner was not charged with that offense. It is fundamental that in an administrative proceeding, "no person may lose substantial rights because of wrongdoing shown by the evidence, but not charged * * * [and] prejudice will be presumed" (Matter of Murray v Murphy, 24 NY2d 150, 157). We therefore annul the determination that petitioner breached 10 NYCRR 80.51.

Our view of petitioner's challenge to the sufficiency of the evidence establishing that he prescribed and dispensed controlled drugs in bad faith and with no legitimate purpose is

less benign. The basis for petitioner's claim is the Department's failure to present expert medical testimony in support of the allegations. Petitioner analogizes the need for expert medical testimony in an administrative proceeding of this type to that of a medical malpractice case. It is his submission that in both, expert medical testimony is essential unless the objectionable practice falls within the competence of a lay trier *(see, e.g., McDermott v Manhattan Eye, Ear & Throat Hosp.,* 15 NY2d 20, 24). Whether that is indeed the rule to be applied is at least open to question, given that in similar cases substantial evidence has been found to exist even though the only evidence presented was that of undercover investigators *(see, e.g., Matter of Erdos v New York State Dept. of Educ.,* 105 AD2d 504, *lv denied* 64 NY2d 604; *Matter of Koudouris v Axelrod,* 102 AD2d 954). But even were we to embrace that standard, here no expert insight was necessary because the testimony of the undercover agents demonstrates that petitioner prescribed pain pills when complaints of pain were not registered, weight loss pills despite the patients' statements that they did not desire to lose weight, and pills for hypertension where all but one of the blood pressure readings were normal. Recourse to expert testimony to enable the Commissioner to conclude that petitioner had not acted in good faith or for a legitimate medical purpose was superfluous.

Petitioner was also found guilty of prescribing a controlled substance for a habitual user in violation of Public Health Law § 3331 (1) and § 3350 and the applicable regulations (10 NYCRR 80.76, 80.85 [a]). The precise rationale offered for overturning that determination, namely, that the undercover investigator was in fact not actually an habitual user, was considered and rejected in *Matter of Kourdouris v Axelrod (supra).* There is ample evidence that petitioner believed Young was a habitual user; Young told petitioner he took the drugs because he liked to "get high", expressed a preference for Talwin over heroin and referred on two separate occasions to his prior participation in a drug rehabilitation program. Further, he also admitted to petitioner that he was taking larger doses of the controlled substances than had been recommended, prompting petitioner to warn Young not to do so, nor to go to another doctor or "we will both get into trouble". Nevertheless, petitioner continued to prescribe controlled substances to Young.

Petitioner is also critical of the finding that he breached Public Health Law § 3331 (4). This section directs that all controlled substances be dispensed in "suitable and durable

container[s]". The evidence, including admissions by petitioner, establishes that he utilized small paper envelopes to dispense controlled substances. The Commissioner's conclusion that the envelopes did not satisfy the requirement of "durable containers" is not irrational.

With respect to petitioner's attack on the finding that he dispensed drugs without the requisite cautionary warning (see, Public Health Law § 3331 [4] [a]), suffice it to say that he had notice of the charges and admitted the violations alleged. That the notice given referred to sections of the Public Health Law which were repealed is of no moment for those sections were retained verbatim and simply renumbered in the law. Moreover, no actual prejudice was alleged.

Respondent also concluded that petitioner had violated 10 NYCRR 80.6 (a). This regulation mandates that controlled substances "be properly safeguarded and securely kept where they will be available for inspection" by properly authorized government investigators. It is uncontroverted that a Department investigator visited petitioner's office and asked to see his stock of controlled substances. Petitioner responded that he kept the majority of his supply at home. Since there was no evidence whatsoever that his home was not a safe place for such storage or that his home was unavailable for inspection, there is no rational basis on which the Commissioner could have found that petitioner transgressed the regulation. That violation is accordingly annulled.

As for petitioner's general protestations that the Department's use of the Physician's Desk Reference (PDR) at the hearing was improper, as was the receipt into evidence of tape recordings of petitioner's conversations with the undercover investigators, we find both contentions devoid of merit. The assertion that the hearsay nature of the PDR precludes administrative reliance upon it has no substance for the "legal residuum" rule has been abandoned (see, Matter of Eagle v Paterson, 57 NY2d 831, 833). In addition, not only did petitioner concede the PDR's authoritativeness, but acknowledged that he relied on it before prescribing or dispensing drugs. And since the tape recordings are sufficiently distinct and audible so as not to require speculation as to their contents, and common-law evidentiary rules are inapplicable to proceedings of this nature (see, Public Health Law § 3393 [5]; Matter of Cole v New York State Dept. of Educ., 94 AD2d 904, 905, lv denied 60 NY2d 556), the tape recordings of petitioner's conversations with the investigators were not improperly received in evidence.

Determination modified, without costs, by annulling so much thereof as found petitioner in violation of 10 NYCRR 80.51 and 10 NYCRR 80.6 (a) and reducing the fine imposed by $2,000 and, as so modified, confirmed. Mahoney, P. J., Kane, Main, Yesawich, Jr., and Harvey, JJ., concur.