■ ERIC WOLFE, Petitioner, v RAYMOND W. KELLY, as Commissioner of the New York City Police Department, et al., Respondents. [911 NYS2d 362]—

Determination of respondent Commissioner of the New York City Police Department, dated April 1, 2007, terminating

petitioner's employment as a detective, unanimously annulled, without costs, the petition granted to the extent of dismissing specification Nos. 1 and 2 against petitioner, and the proceeding brought pursuant to CPLR article 78 (transferred to this Court by order of the Supreme Court, New York County [Herman Cahn, J.], entered December 21, 2007) remanded for a determination of a new penalty on specification No. 3.

In this article 78 proceeding, petitioner challenges a determination of the Commissioner of the New York City Police Department, which terminated his employment following a finding of guilt on charges of perjury and confiscation of drugs and money for personal gain. The petitioner was charged by the New York City Police Department (NYPD or the respondents) with, inter alia, stopping unidentified individuals in unspecified locations and confiscating unspecified amounts of narcotics and cash for his own personal gain on four occasions that occurred on unspecified dates at some time during a 24-month period between January 1998 and December 1999—six to eight years prior to the petitioner's hearing. Petitioner asserts he was denied due process of law, and that the lack of specificity in the charges prevented him from preparing any type of defense other than offering a general denial of any wrongdoing. We agree.

Petitioner is a 17-year veteran, and was employed by the NYPD in 1990, first as an officer and later as a detective specializing in narcotics enforcement. The record reflects that he investigated narcotics complaints and regularly effected arrests and seizures. At his hearing, petitioner estimated that during his career he participated in approximately 450 seizures of drugs and money totaling a value of between $10 million and $15 million.

The record further reflects that at his last annual evaluation prior to the hearing, petitioner was rated as "highly competent" and it was noted that he had been awarded 30 medals (24 for excellent police duty, five for meritorious police duty, and one commendation). He had no prior disciplinary record.

On June 29, 2006, the Police Department's Internal Affairs Bureau (IAB) issued disciplinary charges against petitioner. Specification No. 1 alleged that "on two separate occasions between January 1998 and December 1999," petitioner "stopped two individuals who were traveling in cabs and confiscated, without affecting [sic] an arrest and for personal monetary gain, a quantity of heroin from one, and a quantity of prescription drugs from the other."

Specification No. 2 alleged that "on two separate occasions between January 1998 and December 1999," petitioner "stopped

two individuals and confiscated, for personal monetary gain, a quantity of United States currency." Specification No. 3 alleged that on or about and between April 23, 1998 and December 17, 1998, the petitioner testified falsely while under oath during an official court proceeding, in violation of Penal Law § 210.15.

Due to the lack of specificity in the charges, in particular, specification Nos. 1 and 2, petitioner's attorney requested the equivalent of a bill of particulars. Subsequently, the bill amplified the charges only to the extent of stating that the alleged incident involving heroin occurred in the vicinity of Yankee Stadium in the Bronx. The bill also provided approximate locations in Uptown Manhattan for the alleged thefts of the prescription drugs and of the cash. The bill further stated that three of the four alleged incidents occurred with fellow detective, Julio Vasquez, present, and the incident allegedly involving heroin occurred with both Vasquez and Officer Thomas Rachko present.

At the hearing, there was testimony adduced that Vasquez was the petitioner's patrol partner for five years from 1996 to 2000, and that Rachko worked with the petitioner in the Department's Northern Manhattan Initiative during 1998 and 1999. Both Vasquez and Rachko admitted that during their careers with the NYPD, they were involved in serious crimes, many of which they committed together.

Vasquez admitted to stealing narcotics and cash from drug dealers, and recounted that through the thefts he had amassed approximately $800,000 between 1996 and 2001. Rachko testified to committing serious crimes from almost the day he joined the Department in the early 1980s, and stealing hundreds of thousands of dollars which he then used to satisfy his gambling addiction. His crimes included perjury based on testifying falsely before the grand jury. He acknowledged that he was not concerned by the fact that his perjury resulted in individuals being sent to jail.

In November 2003, Vasquez and Rachko were arrested for the theft of $169,000 from a narcotics merchant who was under federal surveillance. Both subsequently entered into cooperation agreements with federal authorities and pleaded guilty to grand larceny in the second degree. The terms of the agreements required Vasquez and Rachko "to testify at any proceeding in the Eastern District of New York or elsewhere as requested by the [U.S. Attorney's] Office." They were required to testify at petitioner's hearing.

In exchange for their testimony, Vasquez and Rachko were given the possibility of lighter sentences, and the Manhattan

District Attorney's office agreed not to prosecute them for any crimes they may have committed in New York County. Both former officers were facing terms of life imprisonment at the time of petitioner's administrative hearing but had not been sentenced.

The Assistant Deputy Commissioner for Trials (ADC) conducted a hearing on the charges in September and October of 2006. Vasquez testified as to all of the charges, and Rachko testified as to one incident in specification No. 1, as well as the perjury charges alleged in specification No. 3. After Vasquez concluded his testimony, the respondents submitted 10 IAB reports concerning the Bureau's investigation of petitioner. One of the reports stated that Vasquez had accompanied IAB officers on a canvass to find the locations and individuals alluded to in specification Nos. 1 and 2. The report, which was stipulated into evidence, showed that Vasquez had been unable to find or identify either the locations or the individuals.

Petitioner's counsel subsequently moved to dismiss the charges, arguing that petitioner's right to due process had been violated by the imprecise nature of the allegations and by the fact that he was unable to cross-examine Vasquez about the canvass. The ADC stated that he was "perturbed" by the failure of respondents to turn over the reports to petitioner's counsel, and that such failure "taint[s]" the case. Nevertheless, on February 15, 2007, the ADC released his decision, finding petitioner guilty of the three specifications, and recommending dismissal from the Department. The ADC concluded that petitioner's due process rights had not been violated given the "unique nature of the events alleged."

By order effective April 1, 2007, the Commissioner approved the ADC's recommendation and dismissed petitioner from his position with the NYPD. Petitioner commenced this article 78 proceeding in July 2007, contending, inter alia, that the order of dismissal was not supported by substantial evidence. He further claimed that his right to due process was violated by the imprecise allegation of time in the first two specifications. By order entered December 21, 2007, the proceeding was transferred to this Court pursuant to CPLR 7804 (g).

For the reasons set forth below, we agree with the petitioner that he was denied due process of law. It is well settled that the principles of due process applicable to criminal trials apply to government administrative proceedings (*Matter of Murray v Murphy*, 24 NY2d 150, 157 [1969]; *see also In re Ruffalo*, 390 US 544, 550 [1968]). Specifically, as respondents concede, the requirements of due process of law apply here because petitioner

has a constitutionally protected property interest in continued public employment (*Gilbert v Homar*, 520 US 924, 928-929 [1997]).

Chief among the principles of due process is notice of the charges (*Matter of Murray v Murphy*, 24 NY2d at 157). In the context of an administrative hearing, the charges need to be "reasonably specific, in light of all the relevant circumstances, to apprise the party whose rights are being determined of the charges against him . . . and to allow for the preparation of an adequate defense" (*Matter of Block v Ambach*, 73 NY2d 323, 333 [1989]). Thus, the specificity of the notice of charges required varies from case to case, but it must be specific enough to give actual notice to the party being charged (*id.*).

The petitioner correctly asserts that providing him with only a general time frame that spanned two entire years was not reasonably specific so as to satisfy due process requirements. The petitioner's alleged misconduct in specification Nos. 1 and 2 applied to three or four discrete incidents and was therefore not an offense of an ongoing/continuing nature (*cf. People v Keindl*, 68 NY2d 410, 421 [1986] [finding a broad time period reasonable where the defendant endangered the welfare of a child over a long period of time]; *Matter of Block v Ambach*, 73 NY2d at 334).

Petitioner argues that the lack of specificity prohibited him from preparing an adequate defense. Respondents counter that petitioner could have offered an alibi defense by testifying about "any times during those two years when . . . he was not partners with Vasquez or Rachko." This is an incomprehensible—and inane—argument, and one that impermissibly shifts the burden of proof onto petitioner. Neither Vasquez nor Rachko was ever able to supply more information as to dates and times other than to testify that a couple of the alleged incidents occurred on a "sunny day." Presumably then, according to respondents, petitioner could have provided an alibi defense if he could have shown that he had never worked with Vasquez or Rachko on any sunny day in 1998 or 1999. In any event, respondents ensured that such a task could not be attempted by petitioner given the unrefuted fact that petitioner's daily activity reports were cleaned out of his locker after he was charged, and never returned to him.

Equally incomprehensible is that, in denying petitioner's motion to dismiss for violation of due process, the ADC stated that "the unique nature of events alleged, the places where the misconduct occurred and the witnesses present, provided the defense with ample opportunity to prepare." The alleged

incidents could only be assumed as "unique" if petitioner was, indeed, guilty as charged. Otherwise, as the record reflects, there was nothing at all unusual or "unique" about any of the circumstances surrounding the alleged misconduct.

The incidents in specification Nos. 1 and 2 involved seizures of drugs and money. The record shows that petitioner was routinely and legitimately involved in such similar incidents on an almost daily basis as part of his job. Nothing else, but the *allegation* of confiscation for personal gain, distinguished the four incidents from legitimate buy and bust operations: the vaguely described locations were in the territory that petitioner regularly patrolled; and the witnesses to the alleged misconduct were his patrol partner and another detective with whom petitioner frequently worked. In sum, none of the circumstances surrounding the alleged incidents were in any way unique or unusual compared to petitioner's daily routine as an undercover detective.

Had he been charged with wrongdoing on a specific date or at a specific location, petitioner would have had an opportunity to produce documentary evidence that arrests had been made and property had been vouchered and/or impounded, or simply that he had been on vacation or off duty. As it is, petitioner persuasively asserts that the vagueness about dates, locations and amounts of narcotics and money "smacks of a conscious avoidance of any specific fact which [petitioner] could refute."

Therefore, we find that the determination must be annulled as to charges 1 and 2. Given the foregoing, we do not need to reach the merits of petitioner's assertion that the findings of guilt as to specification Nos. 1 and 2 were not supported by substantial evidence. We have considered petitioner's arguments with respect to specification No. 3 and find them unavailing given the low threshold in a substantial evidence analysis. Further, since petitioner's termination was determined by taking into account a finding of guilt on all three charges, the petition is granted to the extent of remanding this matter for reconsideration of the penalty. Concur—Saxe, J.P., Catterson, Moskowitz, DeGrasse and Abdus-Salaam, JJ.