OPINION OF THE COURT
Doris Ling-Cohan, J.
Petitioner Mashon Baines, who is homeless and disabled as the result of hypertension and restricted mobility, has been housed in the city shelter system since approximately June 4, 2008, with her disabled domestic partner and three minor children (ages 6, 9, and 10), for whom she is the primary caretaker. Currently, she and her family are in the Life Family shelter since November 10, 2010. They were transferred to the Life Family shelter from the Crotona Inn shelter, after the alleged incident (explained further below), and had been in the Crotona Inn since June 23, 2010.
Petitioner brings this CPLR article 78 proceeding to reverse the August 31, 2011 decision after fair hearing (decision), issued by the New York State Office of Temporary and Disability Assistance, discontinuing her temporary housing assistance; to reopen the hearing; and to stay it pending the disposition of a criminal case in which she is the defendant. Petitioner also seeks attorneys’ fees, costs, and disbursements, pursuant to 42 USC § 1988 and CPLR article 86. A temporary restraining order and preliminary injunction were previously issued.[1]
Background
On November 8, 2010, petitioner and nonparty Marilyn Gonzalez, the shelter director of the Crotona Inn, were involved in an altercation during a fire drill at the shelter. As a result, petitioner was arrested and charged with assault in the third degree (a class A misdemeanor) and harassment in the second degree (a violation). Ms. Gonzalez also obtained an order of protection against petitioner.
On December 3, 2010, the New York City Department of Homeless Services (DHS) served petitioner, who with her family had already been transferred to the Life Family shelter, with a “Notice to Discontinue Temporary Housing Assistance” (the notice) for a period of at least 30 days, effective December 13, 2010. The notice advised petitioner that she had the right to request an administrative hearing, and that if she did so prior *205 to the effective date of the notice, she would be allowed to remain in the shelter pending the outcome of the hearing.
The sole basis specified in the notice for DHS’s decision to discontinue shelter assistance to petitioner was that “[o]n Monday November 8th, you assaulted Marilyn Gonzalez, the Shelter Director at the Crotona Inn. Ms. Gonzalez sustained bruises on her nose and lacerations on her chest and knee. Your assault on Ms. Gonzalez resulted in your arrest and Ms. Gonzalez obtaining an Order of Protection against you.” (Verified answer, exhibit E, at 1.)
A fair hearing was convened on January 10, 2011, before Administrative Law Judge (ALJ) Evolokia Sofos, immediately adjourned to February 10, 2011, and on that day, adjourned again to February 15, 2011. Both on February 10th, and on February 15th, counsel for petitioner requested an indefinite stay of the hearing, on the grounds that petitioner’s defense counsel in the criminal case would not allow petitioner to testify at the DHS fair hearing. Both times, the ALJ denied the request for an indefinite stay, and noted that, as this was not a criminal case, petitioner’s failure to testify might lead to an adverse inference being drawn against her.
At the hearing, Ms. Gonzalez testified that during a fire drill on November 8, 2010, petitioner was videotaping the drill with her cell phone; Ms. Gonzalez approached petitioner while asking her to stop taping; petitioner continued, however, and extended her cell phone toward Ms. Gonzalez’s face; Ms. Gonzalez got hold of the cell phone with her hand; petitioner “grabbed me and we slipped, wound up on the door on the wall side.” (Verified answer, exhibit B, at 28-29.) She then testified that petitioner had pushed her toward the wall, scratching her face and chest; Ms. Gonzalez attempted to kick petitioner away; petitioner pushed Ms. Gonzalez again, and she fell to the floor; nonparty Patricia Wright, supervisor of child care recreation at Crotona Inn, ran over, and, as Ms. Gonzalez, who had gotten to her feet, attempted to attack petitioner, placed herself between petitioner and Ms. Gonzalez. According to Ms. Gonzalez, members of the shelter staff then intervened and “managed to pull me [Ms. Gonzalez] away” (id. at 35) and both then returned to Ms. Gonzalez’s office, and one of them called 911.
Ms. Wright testified that when petitioner raised her cell phone toward Ms. Gonzalez’s face, Ms. Gonzalez “batt[ed] the phone out of her — move[d] the phone from out of her hand, her face” (id. at 184); the cell phone fell to the floor, petitioner said, *206 “You’re trying to break my phone,” and lunged at Ms. Gonzalez; Ms. Gonzalez raised her leg to block petitioner; and petitioner pushed Ms. Gonzalez to the floor. Ms. Wright further testified that, as she was helping Ms. Gonzalez to get back on her feet, she held off petitioner who was trying to attack Ms. Gonzalez, and that Ms. Gonzalez tried to attack petitioner, as soon as she was back on her feet, but that she restrained her.
There were no other witnesses, but both petitioner and DHS introduced video footage of the incident that had been recorded by security cameras at the Crotona Inn. The video footage is not continuous, but takes photographs, apparently at one-second intervals. In this court’s decision granting petitioner a preliminary injunction, dated October 18, 2011, it is noted that the footage appears to contradict the testimony of Ms. Gonzalez and Ms. Wright, and shows that petitioner was not the aggressor.[2]
At the close of the testimony in the administrative hearing, petitioner’s counsel sought permission to submit a post-hearing legal memorandum supporting his earlier requests for a stay. The ALJ refused permission, and stated that she was closing the hearing.
The decision recites a summary of the testimony of Ms. Gonzalez and Ms. Wright, and notes that both DHS and petitioner’s counsel introduced video footage from the security cameras into evidence. However, the decision is, otherwise, notably silent as to that footage. The decision finds the two women’s testimony credible, and it finds that petitioner “assaulted Ms. Wright, who was holding [petitioner] to prevent her from attacking Ms. Gonzalez.” (Verified answer, exhibit A, at 5.) In addition, the decision notes that petitioner failed to comply with shelter rules by failing to participate in the fire drill. On these bases, the decision upholds DHS’s determination to discontinue petitioner’s temporary housing assistance.
*207 Discussion
As indicated earlier, the notice for DHS’s decision to discontinue shelter assistance was predicated solely on the alleged assault on the shelter director, Ms. Gonzalez.[3] Notwithstanding the notice, it was only after finding that (1) petitioner was videotaping the fire drill, rather than participating in it; (2) petitioner refused Ms. Gonzalez’s direction to stop videotaping and to participate in the fire drill; (3) petitioner threatened and intimidated Ms. Gonzalez by thrusting the cell phone toward her face; and (4) petitioner assaulted Ms. Wright, does the decision find (sandwiched in before the finding that petitioner violated shelter rules by failing to participate in the fire drill) that petitioner assaulted Ms. Gonzalez on November 8, 2010. Thus, as a comparison of the notice and the decision plainly establish, respondents failed to apprise petitioner of all of the charges brought up at the hearing, which violated petitioner’s due process rights.[4]
Assuming, for purposes of this decision, that the instances of wrongdoing cited in the decision are fairly supported by the evidence adduced at the fair hearing, it nonetheless remains a bedrock principal of due process that, in an administrative proceeding, as in a criminal trial, “no person may lose substantial rights because of wrongdoing shown by the evidence, but not charged.” (Matter of Murray v Murphy, 24 NY2d 150, 157 [1969]; see also Matter of Sulzer v Environmental Control Bd. of City of N.Y., 165 AD2d 270 [1st Dept 1991]; Matter of Santiago v Blum, 91 AD2d 505 [1st Dept 1982]; Matter of Capek v Blum, 76 AD2d 924 [2d Dept 1980]; Jamroz v Blum, 509 F Supp 953 [ND NY 1981].) Moreover, “[w]here we are involved with such a *208 fundamental constitutional right as the right to be put on notice of the charges made, prejudice [arising from a violation of that right] will be presumed.” (Matter of Murray v Murphy, 24 NY2d at 157.) Here, the notice charged only an assault upon Ms. Gonzalez. Notwithstanding the notice, the decision, however, is clearly predicated upon a finding of multiple acts of wrongdoing, most of which the notice failed to charge. Accordingly, it cannot stand and must be annulled.
Petitioner’s counsel has notified this court that, on October 28, 2011, petitioner was acquitted of attempted assault and convicted of harassment in the second degree. (Petitioner’s counsel letter of Oct. 18, 2011.)[5] Thus, that part of the petition that seeks an order staying the administrative proceeding is now moot.
Having decided petitioner’s claim that the notice violated petitioner’s due process rights, the court need not reach petitioner’s claim that the Administrative Law Judge’s refusal to adjourn the hearing pending the disposition of the criminal case violated her rights. However the court notes 18 NYCRR 358-5.6 and 358-5.3.[6]
*209 Finally, having prevailed on her claim that her constitutional right to the due process of law was violated, in accordance with 42 USC § 1988 and CPLR article 86, petitioner is entitled to attorneys’ fees, costs and disbursements, as requested.
Accordingly, it is hereby adjudged that the petition is granted to the extent that the decision after fair hearing, dated August 31, 2011 (fair hearing No. 5674395Z), is annulled, with costs and disbursements as calculated by the clerk of the court upon the submission of an appropriate bill of costs; and it is further ordered that the issue of attorneys’ fees is severed; and it is further ordered that, unless the parties are able to agree, [7] the issue of attorneys’ fees is respectfully referred to a special referee to hear and determine in accordance with CPLR 4317 (b); and it is further ordered that counsel for petitioner shall:
a. within 30 days of this order, serve a copy of this order with notice of entry on respondents; and
b. within 90 days of this order, if counsel cannot agree on attorneys’ fees, having availed themselves to the procedures detailed in this decision, serve a copy of this order with notice of entry, together with a completed information sheet (available in *210 room 119), upon the special referee clerk in the motion support office in room 119 at 60 Centre Street, who is directed to place this matter on the calendar of the Special Referee’s Part with respect to the issue of attorneys’ fees.[8]

. Final submissions were received on December 1, 2011 and the case submitted on that date.

. In its October 18, 2011 decision on the request for a preliminary injunction, this court wrote:
“As to petitioner’s likelihood of success on the merits, the decision after fair hearing noticeably fails to discuss significant evidence, namely the video, which, after careful review by this court, clearly shows that petitioner was not the aggressor. In fact, the video appears to show that the subject incident began by the shelter director grabbing petitioner’s camera, and kicking petitioner. At no time does the video appear to show overt aggressive action on the part of petitioner, and at one point, shows petitioner retreating/leaving the area, with the shelter director apparently grabbing petitioner’s head scarf to swing her around and another shelter worker trying to restrain the shelter director.”

. The sole basis specified in the notice for DHS’s decision to discontinue shelter assistance to petitioner is that “[o]n Monday November 8th, you assaulted Marilyn Gonzalez, the Shelter Director at the Crotona Inn. Ms. Gonzalez sustained bruises on her nose and lacerations on her chest and knee. Your assault on Ms. Gonzalez resulted in your arrest and Ms. Gonzalez obtaining an Order of Protection against you.” (Verified answer, exhibit E, at 1.)

. While respondents argued that there is an issue of substantial evidence requiring this proceeding to be transferred to the Appellate Division, in the first instance, the trial court “shall first dispose of such other objections as could terminate the proceeding, including but not limited to lack of jurisdiction, statute of limitations and res judicata, without reaching the substantial evidence issue.” (CPLR 7804 [g].) Here, petitioner’s due process claims were “dispositive and sufficient to ‘terminate’ th[e] proceeding within the meaning of CPLR 7804 (g).” (Matter of Cannings v State of N.Y. Dept. of Motor Vehs. Appeals Bd., 84 AD3d 610, 610 [1st Dept 2011], quoting Earl v Turner, 303 AD2d 282, 282 [1st Dept 2003].)

. By interim order dated November 1, 2011, the court offered all sides an opportunity to provide submissions as to the effect of the criminal action on this proceeding, if any, and final submissions were provided on December 1, 2011, at which time the motion was marked submitted.

. As noted in this court’s October 18, 2011 decision on the preliminary injunction:
“Moreover, it does not appear that the Administrative Law Judge complied with the applicable regulations governing the conduct of ‘Fair Hearings’. 18 NYCRR § 358-5.6 states, in pertinent part, that:
“(b) [t]o ensure a complete record at the hearing, the hearing officer must:
“(5) adjourn the fair hearing to another time on the hearing officer’s own motion or on the request of either party, to the extent allowable by section 358-5.3 of this Subpart;
“(6) adjourn the fair hearing when in the judgment of the hearing officer it would be prejudicial to the due process rights of the parties to go forward with the hearing on the scheduled hearing date;
“(7) review and evaluate the evidence...;
“(8)...where necessary to develop a complete evidentiary record...require the attendance of witnesses... .
“The above regulation specifically references 18 NYCRR § 358-5.3, which provides for adjournments of a fair hearing ‘upon a showing of good cause for requesting the delay.’ Here, arguably, Petitioner has submitted proof of good cause for an adjournment *209 as to avoid potentially self-incriminating testimony, which could be used against her in her pending criminal case, and to avoid inconsistent adjudications. See Britt v International Bus Services, Inc., 255 AD2d 143, 144 (1st Dep’t 1998). Pursuant to the above sections, the Administrative Law Judge arguably had an obligation to adjourn the hearing as it was ‘prejudicial to the due process rights of the parties to go forward with the hearing’ [18 NYCRR § 358-5.6(b)(6)] and for good cause [18 NYCRR § 358-5.6(b)(5) and 18 NYCRR § 358-5.3]. The decision after fair hearing credits the testimony of two of City respondents’ witnesses and completely fails to discuss, ‘review and evaluate’ the video which contradicts their testimony that petitioner was the aggressor, as required by 18 NYCRR § 358-5.6(b)(7). The failure to provide petitioner the adjournment, or stay of the administrative hearing which she requested, deprived petitioner of her due process rights, including an opportunity to rebut respondents’ witnesses, without compromising her Fifth Amendment right. An adjournment may have been appropriate and consistent with the law, as petitioner was a critical and necessary witness and, without her testimony, she was unable to assert a complete defense. Britt, 255 AD2d at 144 (1st Dep’t 1998).”

. Petitioner’s counsel shall provide an affidavit/affirmation indicating hourly rate and time expended, etc., to counsel for respondents, within 30 days of the date of this order. Within 14 days thereof, respondents shall provide objections to fees, with specificity, to plaintiff, which may be by letter. Within 14 days of receipt of respondents’ objections, if any, or at a time convenient to the parties, counsel shall confer in person or by telephone to resolve the issue of attorneys’ fees; such conference to be initiated by petitioner.

. At the time of the hearing, counsel shall provide the Special Referee with petitioner’s affidavit/affirmation in support of the attorneys’ fees, and respondents’ objections.