In the Matter of JEAN OLIVER, Petitioner, v JOSEPH A. D'AMICO, Superintendent, New York State Division of State Police, Respondent. [57 NYS3d 258]—

Proceeding pursuant to CPLR article 78 (transferred to the Appellate Division of the Supreme Court in the Fourth Judicial Department by order of the Supreme Court, Erie County [John A. Michalek, J.], entered March 3, 2016) to review a determi-

nation of respondent. The determination terminated the employment of petitioner.

It is hereby ordered that the determination is unanimously confirmed without costs and the petition is dismissed.

Memorandum: Petitioner, a former New York State Trooper, commenced this CPLR article 78 proceeding seeking to annul respondent's determination finding her guilty of disciplinary charges or, in the alternative, to vacate the penalty of dismissal. She contends, inter alia, that the determination is not supported by substantial evidence and that the penalty of dismissal is shocking to one's sense of fairness.

Petitioner, a Trooper for over 17 years, was previously assigned to work as an investigator with the Community Narcotics Enforcement Team (CNET). In 2014, after she had filed discrimination claims against various coworkers, she was transferred to the Counter-Terrorism Investigation Unit (CTIU). Following that transfer, she met with two of her CTIU supervisors. According to the supervisors, petitioner was given an order that she was "not to work on any CNET matters or cases" and "[was] to work only on Troop A CTIU cases." It is undisputed that, approximately two weeks after that meeting, petitioner transported a person who had been a CNET confidential informant to and from an interview with federal authorities who were investigating a person petitioner had investigated while working with CNET. Shortly thereafter, when petitioner's CTIU supervisors learned of her involvement with that investigation, petitioner was interviewed by the Internal Affairs Bureau (IAB); and she denied ever receiving an order to refrain from any involvement in her prior CNET cases.

During the IAB investigation, which focused on whether petitioner had violated a direct order from a supervisor, it was discovered that petitioner had telephone contact with the same confidential informant. In memorializing that conversation, petitioner listed a CNET supervisor as a "backup" contact on a confidential informant contact sheet. That supervisor, however, was not aware of petitioner's telephone contact with the confidential informant and did not participate in the conversation. Petitioner admitted that she listed the supervisor as a backup merely because "he was in the office with [petitioner] when she was on the telephone" with the confidential informant. Several other discrepancies in petitioner's paperwork were also discovered during the IAB investigation.

Ultimately, five separate charges were filed against petitioner, alleging, inter alia, that she violated a direct order to

refrain from "work[ing] on cases she was assigned while at CNET"; violated a direct order to be truthful in her IAB interview; caused a false entry to be made in official records when she made untrue statements during her IAB interview; failed to assume responsibility or exercise diligence in the performance of her duties; and knowingly made or caused to be made a false entry in official records when she listed her supervisor as a backup on a contact sheet.

Following a hearing on those charges, the Hearing Board found petitioner guilty of every allegation against her and recommended that she be dismissed. Respondent accepted the findings and recommendations of the Hearing Board and dismissed petitioner from the Division of State Police.

It is well established that, "[i]n CPLR article 78 proceedings to review determinations of administrative tribunals, the standard of review for the Appellate Divisions . . . is whether there was substantial evidence to support the Hearing Officer's decision" (*Matter of Wilson v City of White Plains*, 95 NY2d 783, 784-785 [2000]; *see* CPLR 7803 [4]; *Matter of Kelly v Safir*, 96 NY2d 32, 38 [2001], *rearg denied* 96 NY2d 854 [2001]). Contrary to petitioner's contention, we conclude that respondent's determination is supported by substantial evidence (*see generally Matter of Berenhaus v Ward*, 70 NY2d 436, 443 [1987]; *300 Gramatan Ave. Assoc. v State Div. of Human Rights*, 45 NY2d 176, 179-180 [1978]).

Petitioner contends that the Hearing Board improperly expanded the charge in charge number one by expanding the scope of the alleged order from an order to refrain from working on *cases* she had been assigned while at CNET to an order to refrain from working on any "CNET *related* cases" or being involved in "any matters *related* to her previous work in CNET" (emphasis added). We reject petitioner's contention. Charge number one was "reasonably specific, in light of all the relevant circumstances, to apprise [petitioner] . . . of the charges against [her] . . . and to allow for the preparation of an adequate defense" (*Matter of Block v Ambach*, 73 NY2d 323, 333 [1989]; *see Matter of Murray v Murphy*, 24 NY2d 150, 157 [1969]). In any event, the evidence at the hearing established that "[p]etitioner's guilt was based only on violations that were charged" (*Matter of Faure v Chesworth*, 111 AD2d 578, 579 [1985]).

Petitioner further contends that the Hearing Board failed to consider the retaliatory motive of the disciplinary charges in violation of Civil Service Law § 75-b. Inasmuch as petitioner failed to raise that contention in her petition, that contention

"is not properly before us" (*Matter of Dougherty v Degenhart*, 154 AD2d 898, 899 [1989]; *see Matter of Zigarelli v New York State Police*, 126 AD2d 822, 824 [1987], *lv denied* 69 NY2d 611 [1987]), and we therefore do not consider the merits of that contention.

Finally, we conclude that the penalty of termination is not shocking to one's sense of fairness. "Judicial review of an administrative penalty is limited to whether the measure or mode of penalty or discipline imposed constitutes an abuse of discretion as a matter of law . . . [T]he Appellate Division is subject to the same constraints as th[e] Court [of Appeals]—a penalty must be upheld unless it is 'so disproportionate to the offense as to be shocking to one's sense of fairness,' thus constituting an abuse of discretion as a matter of law" (*Kelly*, 96 NY2d at 38, quoting *Matter of Pell v Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County*, 34 NY2d 222, 237 [1974]). We are mindful that, "[i]n matters concerning police discipline, 'great leeway' must be accorded to the [Superintendent]'s determinations concerning the appropriate punishment, for it is the [Superintendent], not the courts, who 'is accountable to the public for the integrity of the [Division of State Police]' " (*Kelly*, 96 NY2d at 38, quoting *Berenhaus*, 70 NY2d at 445; *see Matter of Panek v Bennett*, 38 AD3d 1251, 1252 [2007]). Of critical importance, "a State Trooper holds a position of great sensitivity and trust . . . and [a] higher standard of fitness and character pertains to police officers than to ordinary civil servants" (*Matter of Bassett v Fenton*, 68 AD3d 1385, 1387-1388 [2009] [internal quotation marks omitted]). Given the conduct underlying the offenses, i.e., directly disobeying an order and making false statements in an IAB interview and on official police records, and petitioner's refusal to accept any responsibility for her conduct, we cannot say that the penalty of dismissal shocks our sense of fairness (*see Matter of Harp v New York City Police Dept.*, 96 NY2d 892, 893-894 [2001]; *Matter of Lyons v Superintendent of State Police*, 129 AD3d 1238, 1240 [2015]; *Foster v Kelly*, 55 AD3d 403, 403-404 [2008], *lv denied* 12 NY3d 701 [2009]).

We recognize that the allegations against petitioner do not involve any harm to the public (*cf. Matter of Franklin v D'Amico*, 117 AD3d 1432, 1432-1433 [2014]; *Matter of Ortega v Kelly*, 15 AD3d 313, 314 [2005]; *Matter of Ortiz v Safir*, 291 AD2d 214, 214 [2002]), any misconduct for the personal gain of petitioner (*cf. Matter of Sindone v Kelly*, 15 AD3d 168, 168 [2005]; *Matter of Rose v McMahon*, 1 AD3d 948, 949 [2003]), or

official corruption (*cf. Matter of Rodriguez v Diina*, 35 AD3d 1208, 1208 [2006]). We are also aware that the disciplinary charges herein were filed following petitioner's initial complaints of discrimination and that the Equal Employment Opportunity Commission has since found that "there is reasonable cause to believe that [the New York State Police] has discriminated against [petitioner] on account of her gender and in retaliation for engaging in a protected activity." Our review of the penalty, however, is extremely limited; we do not have any "discretionary authority or interest of justice jurisdiction in reviewing the penalty imposed" (*Kelly*, 96 NY2d at 38). The factual findings of the Hearing Board concerning petitioner's conduct are supported by substantial evidence, and the penalty of dismissal for such conduct is not "so grave in its impact on [petitioner] that it is disproportionate to the misconduct, incompetence, failure or turpitude of [petitioner], or to the harm or risk of harm to the agency or institution" (*Pell*, 34 NY2d at 234). Present—Centra, J.P., Peradotto, Lindley, Curran and Scudder, JJ.