OPINION OF THE COURT
Judith J. Gische, J.
Decision and order of the court is as follows:
*905 Each of the four above-captioned special proceedings challenges a rule, recently promulgated by the New York City Environmental Control Board (ECB), which adopted new procedures for vacating default judgments. The rule, which is codified as title 48, section 3-82 of the Rules of the City of New York (ECB vacate default rule or rule), became effective April 4, 2010.
By administrative order of the Honorable Sherry Klein Heitler, dated November 18, 2010, all cases commenced by petitioners’ counsel, Cohen Hochman & Allen, challenging the ECB vacate default rule, were treated as related matters and transferred to this part. The same order directed that any subsequently commenced challenges filed by the same law firm, albeit on behalf of different clients/petitioners, would likewise be considered related proceedings and be assigned to this part.
By stipulation and order, dated February 1, 2011, a coordinating order (ECB coordinating order) detailing the method by which these related matters would be heard by the court was made. Pertinent to this decision, it was agreed that four test cases would be identified and decided by the court, while the other related petitions were stayed. Any petitioner who was represented by a law firm other than Cohen Hochman & Allen, but who raises similar legal challenges to the ECB vacate default rule, was notified and given the opportunity to have his/her/its petition treated as a related case under the coordinating order.[1]
The four above-captioned proceedings represent the test cases identified by counsel pursuant to the ECB coordinating order. They are consolidated for consideration and determination in this single decision.
At the outset, the court notes that none of the challenges to the ECB vacate default rule concern the manner in which it was promulgated. Thus, for the purposes of this decision, the court accepts respondents’ representations that the rule was promulgated in accordance with the City Administrative Procedure Act (CAPA). The challenges considered, instead, relate to the substance of the ECB vacate default rule.
The New ECB Vacate Default Rule
48 RCNY 3-82 provides, in full, as follows:
*906 “§ 3-82. Request for a New Hearing after a Failure to Appear (Vacating a Default).
“1. (a) A request by a respondent for a new hearing after the respondent did not appear must be made by application to the executive director or his or her designee. The request must be on a form prescribed by the executive director. The request must contain a current mailing address for the named respondent; it must explain how and when the respondent learned of the violation and it must be sworn or certified to under the penalties of perjury. If the request is not made by the named respondent, the request must explain the relationship between the respondent and the person making the request.
“(b) A request for a new hearing, as described in subdivision (a) of this section, that is received within 45 days of the hearing date upon which the respondent did not appear, shall be granted unless such request is found to be made in bad faith. Such findings shall be made at the discretion of the executive director and shall include, but not be limited to, requesting only to admit the charge (s), repeatedly filing the same request or filing the same request in more than one borough at the same time.
“(c) A request for a new hearing that is received more than 45 days from the date upon which the respondent did not appear must contain, in addition to the information stated in subdivision (a) of this section, appropriate supporting documentation. Such request may be granted and a hearing conducted only if the respondent establishes that a new hearing was requested within one year of the time the respondent learned of the existence of the violation, and that there is a reasonable basis to believe that the respondent
“(1) did not receive the notice of the violation because the respondent was
“(A) not properly served with the violation under article three of the civil practice law and rules, article three of the business corporation law, section 1049-a of the New York City Charter or any other provision relating to service of violations returnable to the Environmental Control Board contained in the New York City Administrative Code or the Rules of the City of New York; or
*907 “(B) cited genetically, for example, as ‘Owner’ or ‘Agent,’ on all copies of the notice of violation sought to be served on the respondent; or “(2) was an improper party when the notice of violation was issued. An improper party is a named respondent who is
“(A) an individual who was deceased or legally incompetent on the hearing date upon which the respondent did not appear; or
“(B) for a premises related violation, not the owner, agent, lessee, tenant, occupant or person in charge of or in control of the place of occurrence on the date of the offense.
“A decision to grant the request for a new hearing under this section shall not be considered a final decision on the issue of whether respondent was properly served or was a proper party on the date of offense.
“(d) If a request for a new hearing is granted, the Environmental Control Board shall send a notice to the respondent at the respondent’s address stated on the request for a new hearing. If the respondent is deceased or legally incompetent, a notice shall be sent to respondent’s representative. Notice shall also be sent to the Petitioner.
“(e) No more than one request for a new hearing under this section may be granted with respect to any one notice of violation unless the notice of the new hearing date was not mailed pursuant to subdivision (d) of this section. If the respondent is unable to appear on the hearing date scheduled after a request for a new hearing is granted, respondent may request that the hearing be rescheduled one final time.
“(f) Review of a denial of a request for a new hearing after a failure to appear may be sought pursuant to Article 78 of the New York Civil Practice Law and Rules.”
The Arguments Presented
Identical arguments are raised in each petition. Certain additional arguments are raised by Wilner and Crospo. The petitions allege that the ECB vacate default rule is arbitrary and capricious because: (1) “it ignores Petitioner’s excusable *908 default”; (2) “numerous petitioners have not received notice of hearing dates from ECB”; (3) it is contrary to New York State’s policy favoring judgments on the merits; (4) it punishes and forces petitioner to pay maximum statutory penalties despite “reasonable, proper and credible explanations for the defaults”; (5) it fails to provide for any circumstance of an excusable default; (6) it violates the right to due process under the Federal Constitution; (7) ECB’s methods are not reasonably calculated to provide any real notice to petitioners; (8) it provides less protection than the Administrative Code of the City of New York; (9) it provides less protection than the Civil Practice Law and Rules; (10) it is a stricter default rule than is permitted in the civil courts, even though the judgment amounts meet or exceed civil court judgments; (11) it makes no allowance for petitioners who are not personally served with a summons; (12) it fails to achieve the goals stated as the basis for the amendment; (13) it does not indicate whether the application to open a default will be determined by hearing officers, attorneys or clerks; (14) the time frame to vacate the default is measured from the date of the default rather than the date petitioner receives notice of the default; (15) it will “inevitably” lead to greater litigation; (16) the ECB refuses to consider using modern technology to give petitioners notice; (17) it fails to recognize requests for a new hearing that were pending at the time the new rule became effective; (18) it is too vague; (19) the letters denying the request do not specifically state the reason for the denials; (20) it gave petitioners no time to adjust to the new rules; and (21) the ECB is not required to provide any proof that a petitioner received notice of the defaults. In Wilner’s petition, two additional arguments are raised. They are that: (22) the Department of Environmental Protection (DEP) failed to properly send notice and (23) it conflicts with section 1049-a of the New York City Charter. Crospo and Wilner also argue in their memoranda of law that (24) the ECB vacate default rule conflicts with the fundamental right to a trial guaranteed by the New York State Constitution.
In opposition, respondents argue that the ECB vacate default rule: (a) has a rational basis; (b) achieves the goals set forth in the “Statement of Basis of Purpose”; (c) is not inconsistent with other provisions of law; (d) “bad faith” language is not unconstitutionally vague and, in any event, these petitioners lack standing to raise any challenges to such language; (e) when promulgated, gave petitioners “ample notice” of the new rule *909 pursuant to CAPA; (f) does not have to specify who determines its application and, in any event, the rule is applied by Administrative Law Judges; (g) is not applied retroactively; (h) is not arbitrary and capricious because the ECB is allowed to set fines at the maximum level provided; (i) is not arbitrary and capricious because the ECB does not “embrace technology” that is beneficial to petitioners; and (j) does not conflict with the New York State constitutional right to a jury trial. Respondents then separately, and at length, argue that the ECB vacate default rule does not deny petitioners any due process rights. Finally, respondents argue that the application of the ECB vacate default rule in each of the test cases was reasonable and rational.
Not all petitioners in the test cases are aggrieved by all of the arguments raised in the petitions. The intent of treating all of the cases covered under the ECB coordinating order as related is to deal with the arguments as a whole, and resolve all of the cases in a consistent fashion. Thus, this decision is organized so that all of the salient arguments are addressed by the court in the first part of the decision, followed by a discussion of the application of the decision to each test case.
Discussion
The Standard of Review
In general, in an article 78 proceeding such as this, the court considers whether action by the agency was taken in violation of lawful procedure, was affected by an error of law, was arbitrary or capricious or was an abuse of discretion. (CPLR 7803.) The court’s role in reviewing agency action is not to determine whether the action was correct or to substitute its own judgment for that of the agency. Rather, the court’s role is to determine whether the action taken by the agency was reasonable. (Matter of Pell v Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County, 34 NY2d 222 [1974].) This standard of review applies equally to court consideration of a challenge to an agency promulgated rule. (Matter of Chemical Specialties Mfrs. Assn. v Jorling, 85 NY2d 382 [1995]; Matter of New York State Conference of Blue Cross & Blue Shield Plans v Muhl, 253 AD2d 158 [3d Dept 1999]; Matter ofGASDA, Ltd. v Adduci, 179 AD2d 173 [3d Dept 1992].) As the Court of Appeals held in New York State Assn. of Counties v Axelrod (78 NY2d 158, 166-167 [1991]):
“We start our discussion of the merits with the *910 elemental proposition that an administrative regulation will be upheld only if it has a rational basis, and is not unreasonable, arbitrary or capricious. Administrative rules are not judicially reviewed pro forma in a vacuum, but are scrutinized for genuine reasonableness and rationality in the specific context. The challenger must establish that a regulation ‘is so lacking in reason for its promulgation that it is essentially arbitrary.’ . . . It is not the judicial function to address, and we do not consider, the ‘policy considerations underlying the standard’ applied on review.” (Citations omitted.)
To the extent petitioners argue that the ECB vacate default rule is unconstitutional, it is clear that a rule that is unconstitutional on its face cannot stand. (See Pashcow v Town of Babylon, 53 NY2d 687 [1981].)[2] A rule that is unconstitutional only in its application cannot be enforced. (Ayotte v Planned Parenthood of Northern New Eng., 546 US 320 [2006].)
Since an article 78 proceeding is a special proceeding, it may be summarily determined upon the pleadings, papers, and admissions to the extent that no triable issues of fact are raised (CPLR 409 [b]; 7801, 7804 [h]). Thus, much like a motion for summary judgment, the court should decide the issues raised on the papers presented and grant judgment for the prevailing party, unless there is an issue of fact requiring a trial (CPLR 7804 [h]; Matter of York v McGuire, 99 AD2d 1023 [1984], affd 63 NY2d 760 [1984]; Matter of Battaglia v Schuler, 60 AD2d 759 [4th Dept 1977]).
The Function and Structure of the ECB
The ECB was established in 1971. Its authority is derived from the New York City Charter and it is part of the New York City Office of Administrative Trials and Hearings. (NY City Charter § 1049-a.) The ECB holds hearings to adjudicate whether persons or entities should be held responsible for violating local laws, rules and regulations that concern pollution and *911 other quality of life issues in New York City. (NY City Charter § 1049-a [d].) There are 13 different New York City agencies that are permitted to issue violations. Issued violations are then adjudicated before the ECB. The agencies authorized to issue violations include the Business Integrity Commission, the Department of Buildings (DOB), the Department of Consumer Affairs (DCA), the Department of Environmental Protection (DEP), the Fire Department, the Department of Health and Mental Hygiene, the Department of Information Technology and Telecommunications, the Landmarks Preservation Commission, the Department of Parks and Recreation, the Police Department, the Department of Sanitation, the Department of Transportation and the Department of Small Business Services.
New York City Charter § 1049-a (g) provides that a final order of the ECB imposing a civil penalty
“shall constitute a judgment rendered by the [ECB] which may be entered in the civil court of the city of New York or any other place provided for the entry of civil judgments within the state, and may be enforced without court proceedings in the same manner as the enforcement of money judgments entered in civil actions.”
The judgments, however, may not exceed $25,000 for each respondent. In addition the New York City Charter expressly authorizes final orders and judgments, whether made after hearing or upon default.
New York City Charter § 1049-a (c) (3) gives the ECB the “authority from time to time to make, amend and rescind such rules and regulations as may be necessary to carry out its duties under this subdivision.” The ECB vacate default rule was promulgated pursuant to such authority.
The Rationale for the New Rule
Under the old ECB vacate default rule, all first requests made to open a default within 30 days of mailing of the default order were granted. Requests that were made between 30 and 90 days of the mailing of the default order were granted where there was a credible excuse for the default and an allegation of a meritorious defense to the violation charged. Requests made after 90 days could still be granted in the interest of justice.
Prior to the adoption of the new ECB vacate default rule, there were numerous defaults by the alleged violators in appearing at hearings scheduled before the ECB. In a September 24, 2009 memorandum to the ECB, recommending change to *912 the existing rule, Helaine Balsam, Legal Director of the ECB, presented the following problems that were occurring and the reasons supporting changes:
“The current rule is vague and is applied in disparate ways across the various offices. Queens grants 85% of the requests, the Bronx 25%; Manhattan 55%. This encourages forum shopping and the filing of the same request in multiple branches. Respondents make numerous requests hoping someone in one of the offices will vacate the default.
“Requests are processed by administrative personnel who have not [szc] legal or formal training. There is no central oversight or tracking.
“In addition, there is no requirement that respondents make a formal submission. Respondents or their representatives simply submit a list [szc] violation numbers with a general statement — for example, improper service. Many requests are frivolous and are filed repeatedly in an attempt to ‘wear down’ administrative personnel. In some instances, respondents actually know about the violation even though service was defective. However, they do not request to appear until they need to renew a license or clear title before a sale of the property.”
Implementation of the New Rule
After following the requirements of CAPA, the ECB voted to approve the ECB vacate default rule challenged in these proceedings.
Respondents represent, and petitioners do not dispute, that the new ECB vacate default rule was first applied only to those applications made after its effective date of April 2010. Any request to vacate a default, already pending at the time the new ECB vacate default rule became effective, was decided under the old rule.
The implementation of the new rule is discussed in the affirmation of Helaine Balsam. In accordance with the rule, a form was developed that must be used by anyone requesting to vacate a default. The form is essentially a check off list, intended to correspond with the permissible reasons to open a default provided in the ECB vacate default rule itself. The form provides a small amount of space for the applicant to explain or offer factual detail in support of the application. The form notifies anyone filling it out that supporting *913 documentation must be provided, otherwise the request will be denied. In April 2010, a new special motion part was established at the main branch of the ECB (located at 66 John Street in Manhattan) to process all motions requesting that a default be vacated.
Once a motion is received by the ECB, it is assigned to an Administrative Law Judge (ALJ) for review and decision. Decisions vacating the default and setting new hearing dates are mailed to the applicants. Decisions denying vacatur are mailed as well. The denials set out the reason for the decisions according to different codes developed by the ECB, which are intended to correspond to the ECB vacate default rule. Notwithstanding that the motions are assigned to ALJs, Ms. Balsam’s description of the actual resolution of each application to vacate a default is extremely formulaic.
Here are some of the examples that are described by Ms. Balsam. Where there are apparent discrepancies between the applicant’s form and the ECB records, even if those discrepancies are factual in nature, they are resolved solely based upon the ECB records, in favor of the ECB, without the need for further factual development. If someone denies receipt of the notice of violation, as long as the affidavit of service by ECB’s process server shows a prima facie valid service, the request to vacate the default is denied, without any further factual inquiry. Ms. Balsam indicates that the bulk of the applications are denied because there is no supporting documentation. So, for example, if someone claims that they are not a proper party because they do not own the property, the request to vacate a default will be denied unless a deed is provided. This apparently is true even though the ECB has ready access to the Automated City Register Information System on the Department of Finance (DOF) Web site to check the bona tides of such contention. (See Matter of Richardson v Rhea, NYLJ, Aug. 31 2010 [Sup Ct, NY County, Gische, J.].)
Legal Analysis of the Arguments
Notwithstanding that there are numerous arguments made by the petitioners in these proceedings, many of them fall into discrete categories. These include challenges to: the lack of discretion to vacate a default;[3] inconsistency with enabling *914 legislation and purpose for the new rule;[4] state and federal constitutional challenges;[5] notice issues;[6] and miscellaneous issues.[7] The challenges are addressed below by the court according to these categories.
Lack of Discretion to Vacate a Default
The new ECB vacate default rule is significant in that it essentially eliminates consideration of any excuse that is offered to explain why the default occurred. If the application to vacate the default is timely made (within 45 days of the default), then the default is vacated regardless of the excuse offered, with the exception of applications made in bad faith. If the application is untimely (made more than 45 days after the default), then even a bona fide excuse will be unavailing to vacate the default, unless the original notice of violation was improperly served or the defaulting party was not a proper party in the first instance.
Petitioners argue that the elimination of this discretion to consider bona fide reasons offered for the default is arbitrary and capricious and that it violates public policy to have disputes decided on the merits. For the reasons set forth below these arguments are rejected.
Administrative rules that set time limits within which to make a request to vacate a default are routine. For example the DCA provides that all motions to vacate default judgments must be made within 15 days after a party knew or should have known about the administrative decision. (6 RCNY 6-44.)[8] The New York City Transit Authority requires that all requests to vacate a default be made within 30 days of a mailing of a notice of default. (Public Authorities Law § 1209-a.) New York City Charter § 1049-a gives an applicant 30 days to move to open a default of any ECB hearing.[9] Thus, a 45-day rule is not per se arbitrary or capricious.
*915 It is true that defaults in other adjudicatory contexts may be vacated based upon discretionary considerations. Thus, CPLR 5015 permits a default to be vacated upon a showing of excusable default and meritorious claim. The Division of Housing and Community Renewal may accept late filings for good cause shown. (Matter of Dworman v New York State Div. of Hous. & Community Renewal, 94 NY2d 359 [1999].) These procedural rules, however, do not apply to proceedings before the ECB and, consequently, are no more than illustrative of a different regime. More significantly, no legal precedent was provided by petitioners warranting a conclusion that discretionary consideration of reasons offered to vacate defaults is mandatory in all contexts. An agency has the discretion to control the means and manner that defaults are vacated and its failure to vacate any particular default is upheld, unless arbitrary or capricious. {See Matter of Ismail v City of N.Y. Envtl. Control Bd., 187 AD2d 269 [1st Dept 1992].) In the absence of legal precedent mandating consideration of discretionary standards, there is no basis to conclude that because the ECB vacate default rule lacks such discretionary considerations, it is arbitrary and capricious.
Even accepting petitioners’ argument that there is a strong public policy in favor of determining disputes on their merits, there is still no basis to conclude that the ECB vacate default rule, as promulgated, is arbitrary and capricious. Public policy alone, without any violation of a statutory or constitutional right, will not justify the court directing an agency or other public body to adopt a certain rule or procedure. {Roberts v Health & Hosps. Corp., 87 AD3d 311 [1st Dept 2011].)
Inconsistency with Enabling Legislation and Purpose for the New Rule
It is black letter law that an administrative agency has no authority to create rules and regulations without a statutory predicate, whether that predicate be express or implied. {Rotunno v City of Rochester, 120 AD2d 160 [4th Dept 1986], affd 71 NY2d 995 [1988].) As a legal corollary, it is also recognized that any rule adopted in excess of its enabling legislation or in conflict with its enabling legislation cannot stand. {Matter of New York State Superfund Coalition v New York State Dept. of Envtl. Conservation, 75 NY2d 88 [1989]; Boreali v Axelrod, 71 NY2d 1 [1987].)
The enabling legislation from which the ECB vacate default rule derives its authority is the New York City Charter. The court finds that the rule, at least on its face, conflicts with *916 that part of the New York City Charter that permits a party to vacate a default within 30 days of the mailing of a notice of default. NY City Charter § 1049-a (d) (1) (h) provides in pertinent part:
“Notwithstanding the foregoing provision, before a judgment based upon a default may be so entered the board must have notified the respondent by first class mail in such form as the board may direct: (i) of the default decision and order and the penalty imposed; (ii) that a judgment will be entered in the civil court of the city of New York or any other place provided for the entry of civil judgments within the state of New York; and (iii) that entry of such judgment may be avoided by requesting a stay of default for good cause shown and either requesting a hearing or entering a plea pursuant to the rules of the board within thirty days of the mailing of such notice.”
The ECB vacate default rule, in order to be consistent with such enabling authority, must permit a party to avoid the entry of a judgment after default by showing good cause within 30 days of the mailing of a notice of default. The actual rule will vacate a default without any showing, provided it is made within 45 days of the date of default.
The inconsistency stems from the triggering events for counting the time within which an application to vacate a default may be considered. The triggering event under the New York City Charter is the mailing of the notice of default, while the triggering event under the ECB vacate default rule is the default itself. Consequently, there may be times when the 45-day period has expired, but the 30-day period has not, because a notice of default was either not mailed or mailed 16 or more days after the default actually occurred.
Respondents argue that this situation would never happen because the ECB routinely mails out notices of default within five days after the default occurs. ECB’s routine, however, is not legally mandated and even if adhered to, it does not guarantee in every case that a notice of default will be sent in sufficient time so that the Charter and the rule will be consistent. On the other hand, the Charter is only violated in those circumstances where a notice of default is not sent at all or, if sent, the notice is sent 16 or more days after the default.
Somewhat analogously, petitioners argue that the rule is arbitrary because the time frame to vacate the default is mea *917 sured from the date of the default rather than the date the petitioner receives the default. There is no requirement, constitutionally or statutorily, that the triggering date be measured from the time a party actually receives notice of a default. The City Charter, however, requires that the right to vacate default for good cause be measured from the time a notice of default is mailed. Thus the rule is neither arbitrary nor capricious for failing to measure a party’s right to vacate a default from the time it receives notice. The rule cannot, however, interfere with a party’s right to vacate a default for good cause within 30 days of a mailing of the notice of default.
In this regard the ECB vacate default rule may not be implemented in a manner which conflicts with the City Charter. The standard in the New York City Charter and the ECB vacate default rule must be separately applied and considered in connection with any application to vacate a default. In this regard, the mandated form should also incorporate the opportunity to develop information in support of a claim that the application is being made within 30 days of the mailing of a notice of default.
Collaterally related is petitioners’ argument that the ECB does not provide any proof about the mailing of its notices of default. This information should be kept and made available to petitioners, so that they can assess whether they are properly within the 30-day rule permitted under the City Charter.
Petitioners’ arguments that the ECB vacate default rule conflicts with Administrative Code of City of NY §§ 24-264 and 24-185, however, are rejected. These provisions are applicable only to cease and desist proceedings commenced by the DEP for air pollution and noise code violations. Procedures for hearings, and any relief for failure to appear at hearings related to compliance with the cease and desist orders is separate and apart from the procedures developed for adjudicating notices of violation. The ECB vacate default rule applies only to the latter and does nothing to diminish the rights permitted under the former.
To the extent petitioners argue that the ECB vacate default rule fails to achieve its stated purposes and/or that it will inevitably lead to more litigation, the arguments are rejected. It is not the court’s province to review how effectively governmental entities implement their policy objectives, in the absence of some constitutional or statutory violation. (Roberts v Health & Hosps. Corp., supra.) It is sufficient that the rule is rationally related to achieve its stated purpose. The court does not inquire about how successful the rule may be. (New York State Assn. of Counties v Axelrod, 78 NY2d 158 [1991].)
*918 State and Federal Constitutional Challenges
Relying primarily on the Supreme Court decision in Matthews v Eldridge (424 US 319, 335 [1976]), petitioners argue that the ECB vacate default rule fails to provide adequate procedural due process under the United States Constitution. The court addresses only those arguments which raise particularized constitutional objections to the ECB vacate default rule.
The touchstones of procedural due process are notice and an opportunity to be heard. (Matter of Prue v Hunt, 78 NY2d 364 [1991]; Matter of Toolasprashad v Kelly, 80 AD3d 530 [1st Dept 2011].) There is no dispute that the constitutional requirements of procedural due process apply to proceedings before administrative agencies. (Wolfe v Kelly, 79 AD3d 406 [1st Dept 2010].) Duly enacted local laws, rules and regulations, however, are clothed with a presumption of constitutionality that applies to any state legislation. (Korotun v Incorporated Vil. of Bayville, 26 AD3d 311 [2d Dept 2006].)
Procedural due process requirements must be met before any default is actually taken. (Matter of County of Clinton [Bouchard], 29 AD3d 79 [3d Dept 2006]; Tupaz v Clinton County, 499 F Supp 2d 182 [ND NY 2007]; Jaouad v City of New York, 4 F Supp 2d 311 [SD NY 1998].) Petitioners acknowledge that the ECB vacate default rule requires that a judgment be vacated where the notice of violation was not properly served in the first place. Under the rule, an application to vacate a default on this basis is allowed, no matter when it is brought. Thus, the ECB vacate default rule, on its face, complies with the constitutional requirement of providing notice prior to a default. Petitioners’ arguments about the adequacy of the notice given after the default has been taken do not implicate constitutional violations.
Petitioners argue further, however, that the boiler plate check off form, now mandated by rule, fails to give an adequate opportunity for an applicant to explain or prove inadequate service. The check off provides: “The respondent (or person named on the ticket) never received the ticket.” On the next page there is the question, “On what date did the respondent first learn about his ticket?” with a line insert for an answer. The next line asks the question, “How did the respondent learn about this ticket? Provide copies of any documents from which the respondent learned about the ticket.” There are then four lines on which the applicant can provide pertinent information. Respondents acknowledge that when an applicant checks off the *919 box denying notice of the underlying violation, the application will nonetheless be denied as long as there is an affidavit from the ECB’s own process server attesting to a valid service. Petitioners argue that the ECB should hold traverse hearings to determine the efficacy of service.
The form developed by the ECB is not perfectly consistent with the ECB vacate default rule. The issue of whether a particular petitioner received an underlying notice of violation (the only information elicited from the form) is not the same as whether the notice of violation was properly served. Notwithstanding this discrepancy, the form does permit a party to explain and provide documents regarding the manner in which the notice of violation was received. This gives any particular applicant an opportunity to justify a claim that the notice of violation was improperly served in the first place. A request to vacate a default before an administrative agency should afford the defaulting party an opportunity to develop a factual record setting forth the reasons that would justify the reopening of a default. (Matter of Yarbough v Franco, 95 NY2d 342 [2000]; Matter of Brooks v New York City Hous. Auth., 58 AD3d 836 [2d Dept 2009].) Even with the discrepancy between receipt of the notice of violation versus the service of the notice of violation, the form still gives the applicant an opportunity to explain and provide documents in support of a claim of improper notice.
The court rejects petitioners’ argument that the ECB is required to hold traverse hearings whenever service is contested. An opportunity to be heard is not always equated with the right to a full-blown evidentiary hearing. (Matter of Vector E. Realty Corp. v Abrams, 89 AD2d 453 [1st Dept 1982].)
While the court is concerned about respondents’ explanation, that a valid affidavit of service on file with the ECB will end their inquiry, this explanation is not a sufficient basis to find the ECB vacate default rule invalid on its face. As long as any particular party can develop a reviewable record at the administrative level, the issue of whether ECB improperly rejected a claim of lack of service in any particular case can be decided in an article 78 proceeding. (See Alfaro Motors, Inc. v Ward, 814 F2d 883 [2d Cir 1987].) An article 78 permits the court only to review the record developed at the administrative level. (Matter of Yarbough v Franco, supra.) Here the process employed by the ECB allows for the development of a record that incorporates valid information contesting service of the notice of violation.
*920 Petitioners also argue that to the extent the ECB vacate default rule permits the ECB to deny an otherwise timely application to vacate a default if it was brought in “bad faith” it is unconstitutionally vague.
A statute or regulation is unconstitutionally vague only if its meaning is so ambiguous or unclear that people of common intelligence must necessarily guess at its meaning. The void-for-vagueness doctrine embodies a rough idea of fairness and does not require impossible standards of specificity which would unduly weaken and inhibit a regulating authority. (Matter of Slocum v Berman, 81 AD2d 1014 [1st Dept 1981].) Moreover, as stated by the Appellate Division, First Department, in the recent case of Amazon.com, LLC v New York State Dept. of Taxation & Fin. (81 AD3d 183, 200 [1st Dept 2010]):
“[U]nder certain circumstances, a statute may be challenged for unconstitutional vagueness both facially and as applied. Yet, both the decision in Stuart (100 NY2d [412,] 422 n 8 [(2003)]) and the Supreme Court in Chapman v United States (500 US 453, 467 [1991]) indicate that a facial challenge is only implicated when First Amendment rights are at issue.” (Citations omitted.)
Where there are no First Amendment rights involved, the challenges for vagueness are limited to those claiming unconstitutionality in the application of the statute, rule, law or regulation. Vagueness challenges must be addressed to the particular facts before the court and the court cannot consider the possibility that a statute, regulation or rule may be vague as applied in other hypothetical situations. (Matter of Mitchell v Fischer, 300 AD2d 490 [2d Dept 2002].) None of the test cases involve the actual application of the bad faith standard. Consequently, the court does not reach this issue at this time.
Petitioners’ argument that the ECB vacate default rule conflicts with the “fundamental right to a trial guaranteed by the New York Constitution” is without merit. (NY Const, art I, § 2.) The right to a jury trial is not absolute, but only exists where such right existed in common law as of 1894 or to those cases as are analogous to those which were traditionally tried by a jury at that time. (John W. Cowper Co. v Buffalo Hotel Dev. Venture, 99 AD2d 19 [4th Dept 1984]; Independent Church of Realization of Word of God v Board of Assessors of Nassau County, 72 AD2d 554 [2d Dept 1979].) There has been no showing by petitioners that a right to a jury trial exists in these *921 administrative proceedings or any matter such as the ones that underlie these petitions. (See Aaron’s Constr. Corp. v Gould, 29 Misc 3d 1216[A], 2010 NY Slip Op 51840[U] [Sup Ct, NY County 2010].)
Notice Issues
Petitioners’ notice issues are far ranging. Some attacks are on the fact that the petitioners never received notice of the hearing dates in the first place, other attacks concern notice of the default after a hearing date has passed. Still other attacks are based generally on the methods that the ECB uses to determine the addresses of particular petitioners for either type of notification.
New York City Charter § 1049-a (d) (2) sets forth the methods of service that are permissible for each type of violation, which may vary, depending upon the issuing agency, type of offense and the status of the alleged violator. These methods include those permitted under the CPLR, the Business Corporation Law and other detailed alternate services set forth in the City Charter itself. Petitioners are not attacking these methods of service. No specific arguments are made that these methods of initial service of the notices of violation are not reasonably calculated to provide notice sufficient to survive a constitutional challenge. (Schroeder v City of New York, 371 US 208 [1962],)[10]
Petitioners argue, generally, that the ECB’s methods are not reasonably calculated to provide any real notice to petitioners, because they do not contact petitioners “through the use of electronic communications or through personal contact.” They also state, through the experience of their common counsel, that notification procedures by the ECB are notoriously inefficient, with many of them never reaching their intended recipient.
According to Helaine Balsam, the procedure followed by ECB once there has been default at a hearing is to mail a notice of default within five days. These notices are generated automatically through ECB’s AIMS database. A second notice is then sent 18 days after the initial notice. Although a third notice is sent, the third notice is not sent in sufficient time for any particular party to make a timely application to vacate the default.
AIMS is the ECB database that contains names and addresses derived from various sources of the information, includ *922 ing records with the New York City Department of Finance, owner registration records of the New York City Department of Housing Preservation and Development (HPD) and other registration information that the issuing agency and ECB may have for a particular person or entity. New York City Charter § 1049-a (d) (1) (h) expressly requires that the ECB send a notice of default out to a party by first-class mail before a judgment can be docketed in the Civil Court of the City of New York. Thus, there is nothing arbitrary or capricious about the ECB notifying petitioners by first-class mail, as opposed to through technology or in person. The issue is not what may be a better method of notification, but whether the chosen method of notification is arbitrary and capricious. The court cannot conclude, even in our world of great technological connectivity, that snail mail is not a rational method of providing notification. In fact, it is mandated by the City Charter.
The court finds no merit to petitioners’ argument that respondent should be compelled to use modern technology in connection with notifying petitioners of defaults. The manner of notice is usually a matter of policy and discretion that will not be attacked unless it otherwise violates a constitutional or established statutory right (see Roberts v Health & Hosps. Corp., 87 AD3d 311 [2011]). Neither a constitutional nor statutory violation is involved with ECB’s notification procedures.
The further issue is whether AIMS is a reliable method of obtaining information about where to mail such notifications. Since all of the petitioners initially defaulted, the ECB does not have notices of appearance or other designated addresses at which to notify the defaulters. The AIMS database appears to be a reasonable and logical choice for the ECB to find contact information. The court cannot conclude that the methodology chosen is arbitrary or capricious, even though in any particular case, the contact information used may be attacked as insufficient (at least to the extent that such notification is used as the triggering event for the 30 days in which to request vacating a default for good cause). Petitioners have not even suggested a better overall method for finding this information, even though they contest the information used in their particular cases. Even if they did, it would still be up to the ECB to choose an appropriate method of where to mail such notifications.
Miscellaneous Issues
The court rejects petitioners’ argument that the ECB vacate default rule fails to recognize requests for new hearing *923 that were pending at the time the rule became effective. Respondents represent, and petitioners do not dispute, that ECB has not applied the new ECB vacate default rule to these cases. It has not been applied retroactively to pending requests before the ECB.
The court rejects petitioners’ argument that they were given no time to “adjust” to the new rule. The rule was not applied retroactively and was under consideration, in conformance with CAPA, since September 2009 before it was adopted. It is unclear what would have legally required an “adjustment” time or whether additional time would have been beneficial.
There is no merit to the contention that ECB’s denials of requests to reopen defaults lack specificity. Under the ECB vacate default rule there are only a limited number of bases to otherwise grant such requests. The letters rely on denials that directly correspond to grounds in the ECB vacate default rule.
There is no merit to petitioners’ claim that petitioners have been improperly punished because the default judgments are entered in the maximum amounts allowed by law. The authority to enter such judgment amounts is expressly contained in the City Charter itself. (NY City Charter § 1049-a [d] [1] [d].) Thus, the ECB vacate default rule cannot be attacked for implementing what its enabling authority requires. More importantly, the penalties are otherwise authorized by the offense involved and, therefore, maximum penalties are permitted penalties under law.
There is no merit to petitioners’ argument that the ECB vacate default rule does not specify whether the applications to open defaults are heard by clerks or ALJs. Petitioners have cited no authority that such a rule is required to so specify. In any event, in its implementation, these requests are actually decided by ALJs, so the court need not even reach the merits of any argument that clerks are prohibited from making these determinations.
Application of the Law to the Individual Test Cases
Having addressed the substantive arguments of counsel, the court addresses the rights and remedies of the petitioners in the particular test cases before the court.
1. Rywa Wilner
The salient facts in the Wilner petition are as follows:
A notice of violation was issued by DEP in connection with the property located at 1250 East 73rd Street in Brooklyn (place *924 of occurrence), in the name of Josef Wilner on October 1, 2009. It was dismissed because Josef Wilner was deceased. The notice of violation was then reissued in the name of the actual property owner, Rywa Wilner. Three attempts were made to serve Mrs. Wilner at the place of occurrence, with no success. Thereafter, the notice of violation was posted at the place of occurrence.
Mrs. Wilner claims that she never received the notice of violation because, although she owns the place of occurrence, she does not live there. In addition, the tenants who had been previously living there were evicted, so the notice of violation was left at an empty apartment.
Mrs. Wilner claims that the DOF had her last known address on file in its records, but the ECB never served her with the notice of violation at that location.
She claims that she first became aware of the default when she found the notice of default while cleaning out the place of occurrence. That was “on or about May 22, 2010.” Wilner made an application to vacate her default on July 6, 2010. She claimed that she had never received the ticket. The application contained the further information offered by Michael Wilner (as agent):
“On what date did the respondent first learn about the ticket? This ticket was delivered to a vacant apartment that we found after the tenant was evicted from 1250 East 73rd st. How did respondent learn about this ticket? Provide copies of any documents from which the respondent learned of the ticket. This ticket # was originally violation # 0168580565 and was dismissed. This is EXACTLY the same violation Duly written to My Mother’s name. Enclosed Find the Dismissal of 10/1/2009. I was in TRIAL WITH Joan E Beck-Wall and she told me This case CANNOT Be RE-ISSUED under a Different Name.”
The ECB denied the application to vacate Wilner’s default. Wilner argues that she was not properly served with the underlying notice of violation. She argues that under Administrative Code § 24-524 she was required to be personally served or served at her last known address. In any event, she argues that the ECB should have considered her excusable default.
Respondents agree that the proper method of service for the notice of violation is contained in Administrative Code § 24-524 (i) and that proper service may be effectuated either personally *925 or by mail addressed to the last known address of the person to be served.
Service was effectuated by DEP Inspector CastroClarvarino. After four unsuccessful attempts to serve Mrs. Wilner personally, he affixed a copy of the violation to the door of the place of occurrence and thereafter mailed a copy to that same place. On November 4, 2010 he also mailed a copy to Mrs. Wilner at her last known address as reflected in available records, 1144 East 73rd Street, Brooklyn, New York. Because Michael Wilner has appeared at the earlier dismissed violation hearing, Inspector Castro-Clarvarino made an attempt to personally serve the notice of violation at 78-16 Cooper Avenue, Glendale, New York. When he could not effect personal service at that location, he mailed a copy of the notice of violation to that address.
Whether Wilner is correct in stating that her last known address was at the Glendale address or ECB is correct in indicating that her last known address was the Brooklyn address, the fact remains that Wilner was served, by mail, at each of these addresses. Service, thus, comported with the legal requirements.
To the extent that Wilner argues her excusable default should have been considered, the court has found that the ECB did not act arbitrarily by eliminating this discretionary based reason to vacate a default. There is no dispute that Wilner did not make her application to vacate her default within 30 days of mailing of any notice to her of the default. In her petition, Wilner admits that she became aware of the notice of default on or about May 22, 2010. She did not make her application to vacate the default until July 6, 2010, which is more than 30 days later. Thus she was not entitled to have her application to vacate considered on the basis of “good cause.” (NY City Charter § 1049-a [d] [1] [h].)
Accordingly Wilner’s petition is denied.
2. Crospo Francisco Gladys
Although Crospo alleges that he defaulted on February 1, 2010 “due to a lack of proper and timely notice from ECB,” no facts explaining how the notice was improper are provided to the court. The gravamen of Crospo’s claim is that after he received the original notice of violation, he attempted to fax it to his own attorney, to handle the manner for him. Unfortunately, he faxed it to a wrong telephone number and by the time this error was discovered, Crospo had already defaulted in *926 the hearing before the ECB which was held on February 1, 2010. A fine and judgment for $24,000 was entered against him.
Crospo applied to vacate the default on May 14, 2010. He checked off as a reason that he never received the ticket. The application was denied.
To the extent that Crospo claims that he had a valid reason for defaulting that should have been considered by the ECB, the argument is rejected. As this court has determined, the ECB’s decision to eliminate discretionary bases to vacate defaults is not arbitrary and capricious. While certainly Crospo presents a basis to believe that he was trying to seriously address the notice of violation, and that his failure to do so was inadvertent, those considerations are not germane to the inquiry.
Although Crospo claims that he did not receive the notice of violation, his explanation is that the notice of violation was mistakenly faxed to the wrong fax number. There are documents showing an attempt to fax the notice of violation to his attorney on January 7, 2010 which was before the scheduled hearing date before the ECB. No further facts are offered by Crospo to prove that the initial service of the notice of violation was not made according to law and that he was deprived of an opportunity to put these facts before the ECB at the time of making his application to vacate the default.
The application by Crospo to vacate the default was clearly made more than 45 days after the default. There is no evidence in the record about when Crospo was notified of the default. Thus, there is no basis for the court to conclude that Crospo otherwise had any right to vacate the default for “good cause” because his application was made within 30 days of mailing of the notice of default.
Accordingly Crospo’s petition is denied.
3. Palazzdo Realty VII Corp. (Palazzdo)
Palazzdo defaulted on May 7, 2010. It alleges that this was “due to a lack of timely notice from ECB.” Palazzdo applied to vacate the default approximately 60 days later, on July 7, 2010. The reason given to vacate the default was that it was made less than 45 days since the hearing date. The application further stated that Palazzdo first learned about the ticket on May 26, 2010.
Palazzdo’s argument about improper service is that the notice of violation was not served in accordance with “Rules § 307 and 5015 of the Civil Practice Law and Rules.”
*927 Service in this case was made by a posting of the violation at the place of occurrence and a mailing thereafter to the premises. Additional copies were mailed to the addresses that the HPD, DOF and DOB had on file for the owner or agent of the premises. This service was made in accordance with New York City Charter § 1049-a. While the City Charter also permits service to be made in accordance with article 3 of the CPLR, those are merely permissible alternate methods of service. It is not mandated to the exclusion of other permissible modes of service.
The particular CPLR provisions that Palazzdo is relying upon do not require any other type of service. CPLR 307 deals with service upon the State. CPLR 5015 concerns the standards for relief from a judgment entered on default in the court. It does not apply to vacating defaults before administrative tribunals.
There is otherwise no legal basis for Palazzdo’s petition. Although it claimed in the application that it sought to vacate the default within the 45-day time line, it now concedes that it was made about 60 days after the default. Since there is nothing inherently arbitrary about the ECB setting 45 days as the time period to make such an application, Palazzdo’s failure to come within the time line is sufficient reason for the ECB to have denied its application.
Palazzdo did not make its application to vacate the default within 30 days of mailing of the notice of default either. According to its own application, it learned about the ticket on May 26, 2010. The application to vacate the default was not made until July 6, 2010.
Accordingly, Palazzdo’s petition is denied.
4. Plan B Engineering (Plan B)
The underlying hearing on the notice of violation was scheduled for March 11, 2010.
Plan B claims that the notice of default was incorrectly mailed to the place of occurrence at 81 East 125th Street, New York, New York rather than to its mailing address at 1209 N. Orange Street, Wilmington, DE 19801. In addition, it claims that it should have been identified as Corn Exchange, LLC. Plan B claims that this information was on file with the ECB before it mailed out its notice of default.
Plan B also claims that it should have been served in accordance with CPLR 307 and 5015.
*928 According to Plan B, it first learned about the ticket on May 5, 2010. Within 22 days thereafter, it filed an application to vacate its default. Attached to its application was a printout from the DOF showing the property owner’s name to be Corn Exchange, LLC and an address at “1029 N Orange St Wilmington DE 19801.”
The service of the notice of violation was made in accordance with New York City Charter § 1049-a. For the same reasons as petitioner Palazzdo, service pursuant to the provisions of article 3 of the CPLR are an alternative method of service, not mandated. The specific CPLR provisions relied upon do not concern service of the notice of violation and do not warrant any relief.
Plan B did not apply to vacate the default within 45 days of the hearing date. Since the 45 days is a valid cutoff, Plan B has no relief on this basis.
It is unclear, however, when the notice of default was mailed. It is further unclear whether the notice of default was mailed to Plan B at the correct address and/or under the correct name. Plan B applied for relief from the default less than 30 days after having notice of it. The ECB did not consider this application under the “good cause” standard that is afforded those applicants who seek to vacate a default within 30 days of mailing of the notice of default. The ECB did not consider whether the notice of default was properly mailed to either the correct party or the correct address.
This matter should, therefore, be remanded back to the ECB to consider whether Plan B is entitled to have its default vacated under New York City Charter § 1049-a (d) (1) (h).
Accordingly, the petition is granted to the extent of remanding the matter back to the ECB for further consideration of Plan B’s application to vacate its default, in accordance with New York City Charter § 1049-a (d) (1) (h).
Conclusion
In accordance herewith it is hereby: ordered, adjudged and decreed that the petition of Rywa Wilner is denied, and it is further ordered, adjudged and decreed that the petition of Crospo Francisco Gladys is denied, and it is further ordered, adjudged and decreed that the petition of Palazzdo Realty VII Corp. is denied, and it is further ordered, adjudged and decreed that the petition of Plan B Engineering is granted to *929 the extent of remanding it back to respondent Environmental Control Board for a determination of its application to vacate its default in accordance with this decision.

. At the time of the writing of this decision there were 22 petitions that have been stayed in accordance with the ECB coordinating order. Three other proceedings are returnable on August 17, 2011.

. Since the parties do not raise the issue of whether a separate cause of action for declaratory relief should have been made in order to properly raise the arguments that the rule violates both the Federal and State Constitutions on its face (see Matter of R & G Outfitters v Bouchard, 101 AD2d 642 [3d Dept 1984]), the court considers the constitutional arguments on their merits without respect to form of action brought. (See also Price v New York City Bd. of Educ., 16 Misc 3d 543 [Sup Ct, NY County 2007] [“Courts, however, may convert an action for a declaratory judgment to an article 78 proceeding or vice versa where it appears that the wrong route has been selected”].)

. These are referenced in this decision as petitioners’ challenges numbers 1. 3. 5. 8. 9 and 10.

. These are referenced in this decision as petitioners’ challenges numbers 8, 12, 14, 15, 21 and 23.

. These are referenced in this decision as petitioners’ challenges numbers 6, 18 and 24.

. These are referenced in this decision as petitioners’ challenges numbers 2, 7, 11, 16 and 22.

. These are referenced in this decision as petitioners’ challenges numbers 4, 13, 17, 19 and 20.

. The ECB vacate default rule also applies to DCA violations. Not raised, and therefore not considered, is whether the ECB vacate default rule conflicts with the particular DCA rule.

. New York City Charter § 1049-a is more fully discussed later in this decision.

. The court clarified at oral argument that petitioners are not attacking the methods provided for the service of the notices of violation.